# The Continental Insurance Company v. Susan A. Horton.

*Practice in supreme court: Evidence: Errors that do not prejudice.* A judgment. will not be reversed for the reception of incompetent evidence when it clearly appears that the evidence so received could not have prejudiced the party raising the objection, nor influence the decision on the merits.

*Evidence: Value.* A daughter of plaintiff who bought many of the articles insured, and was present when others were bought, is a competent witness in an action upon an insurance policy, as to the value of goods burned.

*Insurance: Policy: Provision against double insurance.* A provision in a policy against double insurance is not violated by a prior policy in another company which was known to both parties while the policy in suit was being negotiated, and which, it was fully understood between them, was to be cancelled if the second policy was taken, and which was in fact cancelled, if not actually before the manual reception of the second policy, at least contemporaneously with its complete and effective delivery.

*Instruction to the jury: Requests to charge.* Where an instruction requested is given with a modification containing an element of error, and the request contained precisely the same error, and it is not certain that it could have mislead the jury, the judgment will not be reversed on this ground, at the instance of the party preferring the request.

Suit on an insurance policy was defended on the ground that a subsequent policy was taken out of which no notice was given to defendant. Plaintiff claimed that such policy was never delivered with intent that it should take effect. *Held*, that on this branch of the case it was sufficient for defendant to answer the objections to the policy actually made by the plaintiff, and that instructions asked by defendant that certain extrinsic facts not relied upon by plaintiff would not avoid it, were properly refused as irrelevant.

A request to charge which only differs from the instruction actually given on the same subject in the general charge, in being more verbose and less explicit and clear, may well be declined.

*Heard October 9 and 10.     Decided October 21.*

Error to Genesee Circuit.

This was an action upon a policy of insurance against loss by fire, covering a dwelling house and barn and their contents, brought by Mrs. Horton against the company. She obtained judgment, and the defendant brings error.

*Howard & Long* and *Ashley Pond*, for plaintiff in error.

*William Newton* and *M. E. Crofoot*, for defendant in error.

COOLEY, J.

Of the errors assigned on this record several relate to the admission of evidence which the defense in the court below insisted was immaterial. We have considered each of their objections in the light of the argument that has been made here, and are of opinion that no incompetent evidence was received which could have prejudiced the defense. And while we agree that the erroneous reception of evidence is presumptively injurious, yet when

the cases are so numerous in which the distinction between that which is admissible and that which is not is faint and shadowy, it becomes absolutely necessary in the administration of justice that an appellate court should guard against being over nice and technical in reviewing the decisions of the circuit courts on the reception of testimony, especially when to all appearance the rulings were harmless. Otherwise a cause may be kept for an indefinite time passing from the circuit to the supreme court on writ of error, and back again for new trials, because those courts happen not precisely to agree on some of the numerous questions of evidence which may arise, and which, decided either way, it can be seen would not be likely to influence a decision on the merits.

The objection that the daughter of the plaintiff was allowed to testify to the value of articles burned, without having been shown to possess the proper knowledge to qualify her to speak as an expert, was not well taken. She testified that she bought a good many of the articles, and was present when others were bought. On this evidence she had some knowledge of values which it was proper she should communicate to the jury. The extent of that knowledge, and its sufficiency as a basis for a verdict, were to be tested by her examination, and by the good sense and judgment of the jurors.

The most important questions in the case relate to the existence of other insurance. The policy in suit contained a provision that it should be void if the insured should have or procure any other insurance on the property without consent of the defendants endorsed on their policy. It was undisputed that the husband of the plaintiff had previously obtained in his own name an insurance on the same property in the Genesee County Farmers' Mutual Fire Insurance Company, which had not been surrendered or cancelled at the time insurance by the defendants was applied for, and was not noted on the policy. The plaintiff claimed, however, that this previous insurance was void,

because the husband was not the owner of the property, and also because the Genesee company, by their articles, were prohibited insuring city property, which this had become by an enlargement of the boundaries of the city of Flint since it was obtained. The plaintiff also claimed that this insurance was actually cancelled before the other was obtained, and gave evidence to that effect. The defense, on the other hand, produced testimony that the cancelment took place the day after their policy was issued, and they claimed that there was evidence from which the jury might infer that the husband, in taking the first policy in his own name, acted with the authority and as agent of the plaintiff, and that she relied upon it as a valid insurance, so that all the evils and temptations designed to be guarded against by the condition against double insurance would exist in the case to the same extent as if the first policy had been valid in fact. And they claimed the right to go to the jury on this theory.

We are not satisfied that the defense did not have the full benefit of this theory before the jury, but we do not pause to demonstrate this, because we think it unimportant. The undisputed facts are that while the second insurance was being negotiated, both parties were aware of the existence of the prior policy, and it was a part of their understanding that it should be cancelled. It was cancelled in fact, but whether before or after this second policy was delivered, is the disputed point. The most that the defense can claim is that it was not cancelled until the following day. Their witness was the secretary of the Genesee company, who testifies that plaintiff's husband came to him with the second policy, and asked him to look it over to see if it was good, expressing a purpose to have the first policy cancelled if it was; and on being told it was, the cancelment took place. At this time it is conceded that the premium on the second insurance had not been paid. Now the defense were entitled to have the jury draw any legitimate inference from this evidence; but we have been

unable to discover that it tends to show any purpose on the part of the plaintiff to hold the two insurances in force at the same time. On the contrary, all the evidence on both sides shows that it was not only fully understood and agreed that the first insurance should be cancelled if the second was taken, but that this understanding was carried into effect by an act which, if not actually before the manual reception of the second policy, was substantially contemporaneous. The cancelment of the first policy, under the circumstances, was one of several steps which were to be taken to complete the second insurance, and whether taken a few minutes or a few hours before or after any other step necessary to effect a completed contract, was immaterial, if all were taken substantially at the same time, and before the transaction was considered closed. In this case there was no delay between the several steps which indicated that the plaintiff considered the transaction closed, before the surrender of the first policy; but on the contrary, the evidence most favorable to that view, only showed that plaintiff's husband delayed the cancelment until the second policy could be shown to an expert for his opinion upon its provisions. There was nothing unusual or suspicious in this, and the inference is that plaintiff did not consider herself as having finally accepted delivery of the policy before taking this step to satisfy herself that it gave her the protection she was seeking.

Further exceptions relate to a policy subsequently applied for by plaintiff's husband in her name in the Hartford Fire Insurance Company, notice of which was not given to the defendant. It appears by the evidence on both sides that such a policy was made out by an agent of the Hartford company, and was taken from his office by Mr. Horton. The premium was not paid, and it is left uncertain on the evidence whether it was or was not countersigned by the agent. No written application had been made for it by the plaintiff or her agent, as was customary. Both Horton and the agent testified that it was never delivered, and the

former claimed to have taken it in order to submit it to an examination by an attorney. It bore date four or five days before the fire, and was not returned to the agent until the morning after that event. Although all the direct evidence was to the effect that this policy was never understood to have been delivered, defendants insisted that there were circumstances which indicated the contrary, and that the jury might reasonably conclude that the plaintiff's husband, as her agent, had obtained and held it as valid insurance, and only surrendered it in order not to lose the benefit of the policy in suit.

The circuit judge correctly charged the jury that the provisions of the policy in regard to other insurance are a part of the contract, with which, if material, the plaintiff must comply, and with which if the jury are satisfied she did not comply, she cannot recover. Also, that to make a valid delivery of a written contract, the one party must deliver it intending that it should take effect as his contract, and the party receiving it must accept it as a binding contract to take effect on its acceptance. On the question of the authority of plaintiff's husband to procure insurance for her, he was requested to charge that if Horton was the agent of the plaintiff, authorized to transact her business generally, as well insurance as other business in the care and management of the plaintiff's property, he would be authorized to obtain insurance on her property without her special or direct assent or direction. This request was granted with a modification effected by the insertion of two words only, as follows: That if he was the *general* agent of the plaintiff, authorized to transact *all* her business, etc. This modification was excepted to. It is true that the instruction given in that form contained an element of error, inasmuch as, by implication at least, it required something more than authority in the husband to effect insurance for his wife, to warrant his doing it without her special assent or direction. But the instruction requested contained precisely the same error, for that also assumed

that to authorize the husband to act in the particular case without special assent or direction, he must have the powers of general agency in addition to the power to effect insurance. But though both were in this particular inaccurate and self-contradictory, we find it impossible to convince ourselves that men of ordinary intelligence, which jurors must be supposed to be, could have been misled by either. But if they could be, the fault in this case rests rather with the defense, in making such a request, than with the court in carelessly following, and perhaps making more prominent by the modification, the erroneous implication. Had the defense requested a distinct instruction that if the husband was authorized to effect insurance for the wife, he might do so without special direction or assent, it is not likely the request would have been denied; and a request for instruction that if he were her general agent he would have the like authority to insure her property, would have been equally proper and correct; but to couple the two as necessary elements in the authority to insure for her without special direction or assent was to suggest an error which the court seems inadvertently to have fallen into. We are not disposed to reverse the judgment for an error thus originating, especially when we cannot think it likely to mislead. The record does not show that the request as made was read in the presence of the jury, and if not they could not be misled by having their attention directed to the modification made. We can draw no inference either way on this question of fact.

There was evidence in the case that previous to the making out of the Hartford policy an attempt had been made to burn the house insured, and there was testimony both ways on the question, whether this fact was communicated to the agent of the Hartford company. The defense requested the judge to instruct the jury as follows:

"If the plaintiff recognized and regarded the Hartford policy as valid at the time of the loss, and the same had been taken by the agent, whether by previous direction or

subsequent assent of the plaintiff, or within the scope of his authority, without notice to the defendant, the fact that said Hartford policy was voidable merely by proof of some extrinsic fact not appearing on the face of the policy, will not have the effect to destroy its character as additional insurance, but possession of the Hartford policy by plaintiff, or her agent with her consent, plaintiff supposing it to be valid and subsisting insurance, would vitiate the policy in suit, and plaintiff cannot recover.

" If the jury are satisfied that notice of the attempt to fire the building was brought to the attention of the agent who issued the Hartford policy, before he issued the same, and that such notice was sufficient to put him upon inquiry, the Hartford company will be charged with notice of such attempt, and the policy cannot be held void in this suit for want of notice.

" The question of the concealment of the fact of a former attempt to burn the building, from the agent of the Hartford company, is a fact to be pleaded by the Hartford company, and being a fact extrinsic of and not appearing on the face of the policy, cannot avail the plaintiff in this action to divest the Hartford policy of the character of additional insurance, if said Hartford policy was regularly issued and accepted by the plaintiff."

All these requests were refused.   And however correct they may have been as abstract propositions, we think they were correctly refused, unless the plaintiff was relying on some extrinsic fact to defeat the Hartford policy.   The record does not show that such was the fact.   That being so, the defense had no interest in suggesting possible infirmities in the Hartford policy, which the plaintiff was not urging.   It was sufficient for the defense to answer the objections to that policy actually made by the plaintiff, and any thing more was a work of supererogation in which they were not entitled to assistance from the court.

A question was made on the trial whether the plaintiff was owner of all the property insured, and the judge

instructed the jury that if the ownership of the property was incorrectly or fraudulently represented by the plaintiff, as an inducement to the issuing of the policy, this would avoid the contract, and the plaintiff could not recover. But he refused to charge in the following words: "If the jury are satisfied that plaintiff procured insurance on the property covered by the policy, representing it to be her property, and that the title or ownership of the property was material to the risk, and that any considerable portion of the property covered by policy and included in loss did not belong to the plaintiff, the same having been insured by defendant supposing it to have all belonged to plaintiff, which belief was induced by plaintiff or her agent, such representations would be a fraud upon the defendant which would vitiate the policy." How this request differs from the charge actually given, except in being more verbose and less explicit and clear, is not apparent. We think the circuit judge was justifiable in declining to charge as requested. And if he had refused to sign the bill of exceptions until everything was stricken from it which was immaterial to the points of law presented, he would not only have been entirely justifiable, but would greatly have simplified and relieved the labors of counsel and court in examining and passing upon the record here.

We think the judgment should be affirmed, with costs.

The other Justices concurred.