Mary Beth Kelly, J.
In this case, we decide whether a civil contempt petition that seeks indemnification damages under MCL 600.1721 imposes “tort liability” within the meaning of MCL 691.1407(1) of the governmental tort liability act (GTLA), MCL 691.1401 et seq. Given the Legislature’s use of the common-law term “tort,” we hold that “tort liability” as used in MCL 691.1407(1) of the GTLA encompasses all legal responsibility for civil wrongs, other than a breach of contract, for which a remedy may be obtained in the form of compensatory damages. We further hold that MCL 600.1721 imposes “tort liability” because it authorizes an award of indemnification, or compensatory, damages *372 to remedy a noncontractual civil wrong. Consequently, MCL 691.1407(1) of the GTLA provides governmental agencies with immunity from civil contempt petitions seeking indemnification damages under MCL 600.1721. Because the Court of Appeals reached a contrary conclusion, we reverse the judgment of the Court of Appeals and remand this case to the probate court for entry of an order granting summary disposition in favor of respondent.
I. FACTS AND PROCEDURAL HISTORY
In the summer of 2004, petitioner, Nancy Mick, became increasingly concerned about the mental health of her brother, Stephen Bradley. She noticed that Bradley had grown “more agitated and violent,” and he had admitted to her that he was suicidal. Petitioner feared that if Bradley did not receive help “he could kill himself and his family.” As a result, in August 2004, she petitioned the Kent County Probate Court for Bradley’s hospitalization, averring that Bradley was a danger to himself and his family. She accompanied her petition with a supplemental petition for examination and hospitalization, requesting a court order directing a peace officer to take Bradley into protective custody.
The probate court granted the petitions that same day and issued an order requiring that Bradley submit to psychiatric examination and requiring his hospitalization. The order specified that a “peace officer shall take [Bradley] into protective custody and transport him ... to [Cornerstone Community Mental Health or any community mental health contract facility].” Petitioner immediately submitted the order to respondent, the Kent County Sheriffs Department, for execution and provided additional details to the sergeant on duty *373 concerning how petitioner expected Bradley to react to being taken into custody and the fact that Bradley possessed several firearms.
Respondent, however, did not timely execute the probate court’s order. In the days that followed, petitioner contacted respondent twice in regard to Bradley’s situation, and each time respondent assured her that the pickup would take place as soon as possible. Ultimately, respondent never attempted to take Bradley into protective custody and, nine days after the probate court entered its order, Bradley committed suicide.
After Bradley’s suicide, petitioner wrote to Kent County Sheriff Lawrence A. Stelma, requesting an internal investigation, which ultimately concluded that the failure to execute the order was “an obvious case of simple neglect in that this petition was not executed in the manner that mental health petitions normally are handled.”[1] Stelma informed petitioner by letter of the investigation’s findings, confirming that the order had not been executed and describing respondent’s failure as “an unusual occurrence” that did “not reflect any policy or procedure on the part of the Sheriffs Department . . . .”
More than two years later, petitioner, acting as personal representative of Bradley’s estate, filed a wrong *374 ful death suit against respondent and Stelma, alleging that they were grossly negligent in their failure to execute the probate court order and that their negligence was the proximate cause of Bradley’s death. The circuit court dismissed the case on governmental immunity grounds, opining that respondent was not a legal entity that could be sued and that Stelma was individually immune from suit under the GTLA.
Petitioner did not appeal the circuit court’s dismissal. Instead, she filed a petition for civil contempt in the probate court against respondent. The petition alleged that respondent’s violation of the probate court’s order constituted contempt of court, entitling her to indemnification damages pursuant to MCL 600.1721. The petition replicated the contents of petitioner’s wrongful death complaint and sought damages “including, but not limited to, all of those damages set forth in the Michigan Wrongful Death Statute, MCL 600.2922, et seq.”[2]
Respondent moved for summary disposition, arguing that it was immune from liability under MCL 691.1407(1) of the GTLA because petitioner sought to impose tort liability in the guise of a civil contempt petition.[3] The probate court denied respondent’s motion reasoning that “[governmental immunity does not *375 insulate a contemnor from the contemnor’s refusal or negligence to obey a court order.” The probate court acknowledged an “overlap of remedies between a court[’s] power of contempt and a compensation that may be argued under tort,” but concluded that this overlap did not impede a court’s inherent authority to punish contempt.
- Respondent appealed the probate court’s ruling to the circuit court, which reversed and remanded the case to the probate court for entry of an order granting summary disposition in favor of respondent. Relying on the definition of “tort liability” articulated in Tate v Grand Rapids,[4] the circuit court concluded that petitioner’s civil contempt petition was based in tort because the petition sought damages under the wrongful death statute. The circuit court, therefore, held that petitioner’s claim was barred by the GTLA. While cognizant of courts’ inherent authority to punish contempt, the circuit court concluded that the scope of that inherent authority is limited to the power to punish by fine or imprisonment. Because petitioner did not invoke the probate court’s inherent power to punish contempt by either fine or imprisonment, but instead sought indemnification damages pursuant to MCL 600.1721, the court did not consider its holding — that petitioner’s claim is barred by the GTLA — as infringing on courts’ inherent contempt powers.
The Court of Appeals granted petitioner’s application for leave to appeal and, in a published opinion per curiam, reversed the circuit court’s decision.[5] The Court of Appeals held that the GTLA does not immunize governmental agencies from “tort-like” damages *376 sought pursuant to MCL 600.1721.[6] Relying on Tate[7] and Ross v Consumers Power Co (On Rehearing)[8] the Court of Appeals opined that whether a “contempt claim can survive a governmental immunity challenge is controlled not by the nature of the damages sought, but by whether [the] contempt action is a cause of action that is separate and distinct from one that is grounded in tort liability.”[9] The Court of Appeals explained:
In accord with the Ross Court’s holding that the GTLA will not bar recoveiy simply because the underlying facts could have also established a tort cause of action, we conclude that tort-like damages are recoverable in a contempt action assuming contempt can be proved. Thus, whether the GTLA implicates the viability of Mick’s contempt action rests on whether Mick can successfully plead and establish a contempt cause of action. The nature of the damages being requested has no role in determining whether the action is barred by [the] GTLA. Consequently, the circuit court erred when it dismissed this case merely because the damages sought were similar to tort damages.[10]
We granted respondent’s application for leave to appeal to consider whether “petitioner’s claim for civil contempt indemnification damages under MCL 600.1721 is barred by the [GTLA].”[11]
II. STANDARD OF REVIEW
We review de novo a decision on a motion for summary disposition.[12] Under MCR 2.116(C)(7), summary *377 disposition is appropriate when a claim is barred by governmental immunity.[13] A party filing suit against a governmental agency bears the burden of pleading his or her claim in avoidance of governmental immunity.[14]
We also review de novo issues of statutory interpretation.[15] When construing a statute, we consider the statute’s plain language and we enforce clear and unambiguous language as written.[16] While terms must be construed according to their plain and ordinary meaning, words and phrases “as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.”[17] Moreover, when the Legislature chooses to employ a common- law term without indicating an intent to alter the common law, the term will be interpreted consistent with its common-law meaning.[18]
III. ANALYSIS
Since Michigan became a state in 1837, Michigan jurisprudence has recognized the preexisting common-law concept of sovereign immunity, which immunizes the “sovereign” state from all suits to which the state has not consented, including suits for tortious acts by the state.[19] This common-law concept of sovereign immunity has since been replaced in Michigan by the *378 GTLA and is codified by MCL 691.1407(1), which limits a governmental agency’s exposure to tort liability.
Specifically, MCL 691.1407(1), which is at the center of this litigation, broadly provides that “a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function.”[20] Under the statute, all suits that seek to impose “tort liability” for an agency’s discharge of a governmental function are barred by the GTLA, subject to several exceptions that the Legislature has expressly provided for in the GTLA and in other statutes authorizing suit against governmental agencies.[21] While conceding that none of these exceptions applies to the instant case, petitioner asserts that the immunity afforded by the GTLA is inapplicable because a civil contempt petition seeking indemnification damages does not seek to impose tort liability.
Whether a contempt order imposing indemnification damages imposes tort liability is not readily apparent; the GTLA does not define the phrase “tort liability” and our caselaw has not offered a definition of the phrase. Moreover, the contempt statutes under which petitioner brings suit include no express reference to the imposition of “tort liability.” The civil contempt petition in the instant case is based on the general contempt statute of MCL 600.1701, a provision of the Revised Judicature Act (RJA), MCL 600.101 et seq., that identifies potentially punishable contemptuous conduct. This *379 provision, which is a codification of courts’ power at common law to punish contemptuous conduct,[22] states in relevant part:
The supreme court, circuit court, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in all of the following cases:
(c) All attorneys, counselors, clerks, registers, sheriffs, coroners, and all other persons in any manner elected or appointed to perform any judicial or ministerial services, for any misbehavior in their office or trust, or for any willful neglect or violation of duty, for disobedience of any process of the court, or any lawful order of the court, or any lawful order of a judge of the court or of any officer authorized to perform the duties of the judge.
(g) Parties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of the court.[23]
By its plain terms, MCL 600.1701 allows courts to exercise their inherent contempt powers for the purpose of either coercing a contemnor to comply with the court’s order (civil contempt) or punishing a contemnor for contemptuous conduct (criminal contempt) by imposing a “fine or imprisonment, or both . . . .”[24]
*380 In addition to the coercive and punitive sanctions permitted for civil and criminal contempt under MCL 600.1701, a court, in a civil contempt proceeding, may also order indemnification of those persons who have sustained losses as a result of contemptuous conduct under MCL 600.1721.[25] This statute, on which petitioner relies, provides that “[i]f the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him . . . .”[26]
The contemptuous misconduct referred to in these contempt statutes, however, does not clearly constitute tortious action such that petitioner’s civil contempt petition would necessarily impose tort liability for purposes of the GTLA. Whether petitioner’s claim is barred by the GTLA thus requires two related inquires. First, we must determine the meaning of the phrase “tort liability” as used in MCL 691.1407(1) of the GTLA; and, second, we must decide whether a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose tort liability, such that the GTLA would prohibit petitioner’s claim.
A. TOET LIABILITY
As noted, the GTLA does not define the phrase “tort liability,” nor has this Court previously determined the meaning of that phrase. The lower courts applied the definition of “tort liability” articulated by the Court of Appeals in Tate, a case involving a statute that imposes strict liability on dog owners for injuries resulting from *381 dog bites.[27] In Tate, the plaintiff sought to avoid application of the GTLA by arguing that strict-liability actions fell outside the scope of tort liability.[28] In rejecting the plaintiffs argument, the Court of Appeals explained, “The GTLA unambiguously grants immunity from all tort liability, i.e., all civil wrongs for which legal responsibility is recognized, regardless of how the legal responsibility is determined, except as otherwise provided in the GTLA.”[29]
We do not necessarily disagree with Tate’s general understanding of the phrase “tort liability.” However, in our judgment, Tate’s definition is incomplete and fails to acknowledge the historical underpinnings of the word “tort” as that word has been used in our common law for more than a hundred years. Mainly, a “tort” is an act that has long been understood as a civil wrong that arises from the breach of a legal duty other than the breach of a contractual duty.[30] For example, English common-law courts have for centuries recognized a civil wrong as an infringement on private rights belonging to individuals and divided civil wrongs into two categories: those sounding in contract and those sounding in tort.[31] *382 The Queen’s Bench has acknowledged this division in a case involving a bailee’s liability for injury to the plaintiffs horse, in which it concluded that the legal basis for the plaintiffs claim was a tort and that damages to compensate for the injury should be allowed. Lord Justice Smith explained:
[I]f in order to make out a cause of action it is not necessary for the plaintiff to rely on a contract, the action is one founded on tort; but, on the other hand, if, in order successfully to maintain his action, it is necessary for him to rely upon and prove a contract, the action is one founded upon contract.[32]
The Queen’s Bench, then, recognized only two types of civil wrongs, those involving contractual wrongs and those involving the breach of some other legal duty, the latter of which is a tort and is remedied through an *383 award of compensatory damages.[33]
Michigan common law, which has its roots in English common law, has likewise recognized this distinction between torts and contracts as the two types of civil wrongs.[34] For example, in Churchill v Howe,[35] this Court considered whether a debtor’s liability was limited to the parties’ contractual relations. In concluding that the creditor’s allegations of fraud sounded in tort, we acknowledged the general principles that a tort requires a “wrong independent of a contract” and that “the distinguishing feature of a tort [is] that it consists in the violation of a right given or neglect of a duty imposed by law, and not by contract.”[36] Stated differently, and as this Court has repeatedly recognized in the *384 nearly one hundred years since Churchill, when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort.[37]
Our common law likewise incorporates the concept that a tort necessarily involves compensation to an injured party for the wrong committed by a tortfeasor.[38] As we explained in Wilson v Bowen,[39] a case involving an award of damages for malicious prosecution, “the purpose of an action of tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant; that compensation to the plaintiff is the purpose in view . . . .”
Given the foregoing, it is clear that our common law has defined “tort” to be a civil wrong, other than a breach of contract, for which the court will provide a remedy in the form of compensatory damages. Accordingly, because the word “tort” has “acquired a peculiar and appropriate meaning” in our common law, and because the Legislature is presumed to be aware of the *385 common law when enacting legislation, we conclude that the term “tort” as used in MCL 691.1407(1) is a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.[40]
Our analysis, however, requires more. MCL 691.1407(1) refers not merely to a “tort,” nor to a “tort claim” nor to a “tort action,” but to “tort liability.” The term “tort,” therefore, describes the type of liability from which a governmental agency is immune. As commonly understood, the word “liability,” refers to liableness, i.e., “the state or quality of being liable.”[41] To be “liable” means to be “legally responsible[.]”[42] Construing the term “liability” along with the term “tort,” it becomes apparent that the Legislature intended “tort liability” to encompass legal responsibility arising from a tort. We therefore hold that “tort liability” as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.[43]
*386 In reaching this holding, we are cognizant of our decision in Ross, on which the Court of Appeals relied in concluding that “tort-like damages are recoverable in a contempt action” against a governmental entity.[44] Our opinion in Ross actually concerned nine cases, including Rocco v Department of Mental Health. In that case, the plaintiffs’ decedent was murdered while he was a patient at a hospital administered by two state agencies. The plaintiffs filed a two-count complaint alleging both negligence and breach of an implied contract. We held that the GTLA barred the plaintiffs’ negligence claim, but that the plaintiffs’ second claim, breach of an implied contract, was not barred. The defendants had argued that the plaintiffs’ contract claim should be dismissed because “most of the allegations contained in Counts I and II are identical. . . .”[45] In rejecting that argument, we stated:
We recognize that plaintiffs have and will attempt to avoid [MCL 691.1407(1)] of the governmental immunity act by basing their causes of action on theories other than tort. Trial and appellate courts are routinely faced with the task of determining whether the essential elements of a particular cause of action have been properly pleaded and proved. If a plaintiff successfully pleads and establishes a non-tort cause of action, [MCL 691.1407(1)] will not bar recovery simply because the underlying facts could have also established a tort cause of action.[46]
Petitioner and the Court of Appeals interpret this passage from Ross to mean that the label of the action controls in determining whether an action imposes tort *387 liability and that, if the claim is not a traditional tort, then the GTLA is inapplicable and “tort-like” damages are recoverable. Ross, however, made no such pronouncement and did not consider the meaning of “tort liability,” which is the question that is now before this Court. Instead, consistent with our holding in this case, Ross merely recognized that the GTLA does not bar a properly pleaded contract claim.[47]
In addition, our holding clarifies that Ross’s pronouncement, that “non-tort cause[s] of action” are not barred by the GTLA, should not be interpreted as limiting the GTLA’s application to only traditional tort claims.[48] The Legislature’s express decision to use the word “liability” in describing the governmental immunity available under MCL 691.1407(1), rather than “action” or “claim,” indicates that our focus must be on the nature of the liability rather than the type of action pleaded. For this reason, we decline to limit the GTLA’s application to suits expressly pleaded as traditional tort claims, as petitioner would have us hold.[49] Further, *388 because the nature of the liability will often be reflected in the remedy available, we disagree with the Court of Appeals’ statement that “[t]he nature of the damages being requested has no role in determining whether the action is barred by the GTLA.”[50] Instead, because a tort, by definition, encompasses an award of compensatory damages, the nature of the damages is precisely relevant in determining whether the type of liability imposed is tort liability.[51] Accordingly, regardless of how a claim is labeled, courts must consider the entire claim, including the available damages, to determine the nature of the liability imposed.[52]
In summary, several principles emerge from our explication of the phrase “tort liability” that will guide *389 courts charged with the task of determining whether a cause of action imposes tort liability for purposes of the GTLA. Courts considering whether a claim involves tort liability should first focus on the nature of the duty that gives rise to the claim. If the wrong alleged is premised on the breach of a contractual duty, then no tort has occurred, and the GTLA is inapplicable.[53] However, if the wrong is not premised on a breach of a contractual duty, but rather is premised on some other civil wrong, i.e., some other breach of a legal duty, then the GTLA might apply to bar the claim. In that instance, the court must further consider the nature of the liability the claim seeks to impose. If the action permits an award of damages to a private party as compensation for an injury caused by the noncontrac-tual civil wrong, then the action, no matter how it is labeled, seeks to impose tort liability and the GTLA is applicable.[54]
*390 B. CIVIL CONTEMPT INDEMNIFICATION DAMAGES
The civil contempt petition in this case alleges that respondent’s contemptuous misconduct, prohibited by MCL 600.1701, caused Bradley’s suicide and seeks indemnification damages under MCL 600.1721. Because petitioner’s civil contempt petition seeks indemnification under MCL 600.1721, we must construe the language of that provision to determine whether such petitions impose tort liability. The provision states:
If the alleged misconduct has caused an actual loss or injury to any person the court shall order the defendant to pay such person a sufficient sum to indemnify him, in addition to the other penalties which are imposed upon the defendant. The payment and acceptance of this sum is an absolute bar to any action by the aggrieved party to recover damages for the loss or injury.[55]
Although we have not previously considered whether this language imposes “tort liability,” this Court has implicitly recognized that the elements necessary to establish entitlement to relief under this provision are essentially the same elements necessary to establish a tort, i.e., a legal duty, breach of that duty, causation, and injury. In Holland v Weed,[56] for example, we explained that the predecessor of MCL 600.1721
authorizes this imposition [of indemnification damages] in place of a fine, and it is for the purpose of protecting the civil rights and remedies of the party, and to compensate him for the injury or loss occasioned by the misconduct alleged-, and it is only when an actual loss or injury has been produced to the party by the misconduct alleged, and that is made to appear to the satisfaction of the court, and some sum sufficient to compensate the party or indemnify *391 him is adjudged, that the court can impose the costs and expenses to be paid by such party.[57]
Stated differently, the plain language of MCL 600.1721 requires a showing of contemptuous misconduct that caused the person seeking indemnification to suffer a loss or injury and, if these elements are established, requires the court to order the contemnor to pay “a sufficient sum to indemnify” the person for the loss.
A closer examination of the statutory language confirms that it contains all the elements of a tort claim in the guise of a contempt claim. Under the first sentence of the statute, the “alleged misconduct,” which is a necessary element of any contempt claim, stems from the “neglect or violation of [a] duty” under MCL 600.1701 or the “omission to perform an act or duty” under MCL 600.1715. Thus, the “alleged misconduct” is synonymous with the legal duty and breach of that duty recognized in traditional tort law. Clearly, this misconduct, which arises from the relevant contempt statute — not a contractual relationship between the parties — is a non-contractual civil wrong.
Because the nature of the duty that gives rise to a civil contempt claim is clearly premised on a noncon-tractual civil wrong, we must further consider the nature of the liability imposed. The first sentence of MCL 600.1721 also requires that this misconduct “causeD” the petitioner’s “actual loss or injury,” thus *392 paralleling the other two elements recognized in a traditional tort claim: causation and damages. Because the first sentence of MCL 600.1721 authorizes a court to order a contemnor to “indemnify” the petitioner for the loss caused by the contemptuous misconduct, the statute clearly sanctions legal responsibility, or liability, in the form of compensatory damages.[58] Plainly, the first sentence of MCL 600.1721 contemplates what is, in essence, a tort suit for money damages.[59]
Additional support for this conclusion is found in the second sentence of MCL 600.1721, which provides that “[t]he payment and acceptance of this sum is an absolute bar to 'any action by the aggrieved party to recover damages for the loss or injury.” That is, the Legislature expressly recognized that a civil contempt claim seeking *393 indemnification damages functions as a substitute for any underlying claim and, thus, bars monetary recovery that could have been achieved in a separate cause of action. As the Legislature acknowledged, the statutory remedy, then, is effectively a proxy for a tort claim.[60]
Given that the statutory language of MCL 600.1721 clearly permits the payment of compensatory damages to a petitioner for a noncontractual civil wrong, we thus hold that a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose “tort liability.”[61] It follows *394 that a party that elects to pursue the statutory remedy available under MCL 600.1721 will be barred from obtaining relief against governmental agencies because those entities are entitled to immunity from “tort liability” under MCL 691.1407(1) of the GTLA. The logical result of this conclusion is that courts are prohibited from exercising their contempt powers by punishing a governmental agency’s contemptuous conduct through an award of indemnification damages under MCL 600.1721.
Our holding, however, should not be interpreted as constraining courts’ inherent contempt powers. While our holding does constrain a court’s statutory authority to order punishment, in the form of compensation in a civil contempt proceeding against a governmental entity,[62] our holding does not infringe on those powers of contempt that are inherent in the judiciary, as recognized in our Constitution and codified by the Legislature.[63] Inherent in the judicial power is the power to prescribe acts that are punishable as contempt through *395 fine or imprisonment, or both.[64] This inherent judicial power to punish contempt, which is essential to the administration of the law, does not include the power to mete out certain punishments for contemptuous acts beyond those contempt powers inherent in the judiciary.[65] Clearly, the punishment the Legislature authorized in MCL 600.1721, compensation for contemptuous misconduct, is not encompassed by the judiciary’s inherent power to punish contempt. Because our holding only involves the GTLA’s application to civil contempt petitions that seek indemnification damages under MCL 600.1721, it does not infringe on courts’ inherent power to punish contempt by fine or impris *396 onment, or both.[66] Moreover, our definition of “tort liability” does not encompass contempt proceedings that seek to invoke courts’ inherent contempt powers; although those proceedings undoubtedly involve a non-contractual civil wrong, the sanction sought does not impose legal responsibility in the form of compensation for the harm done.[67]
C. APPLICATION
The civil contempt petition at issue here alleges that respondent negligently failed to execute the probate court’s order, constituting contemptuous misconduct under MCL 600.1701. The petition alleges that this misconduct caused Bradley’s suicide and seeks indemnification damages for his death under MCL 600.1721. Notably, the damages petitioner seeks in her contempt petition are exactly the same damages that petitioner sought under the wrongful death statute[68] in her previous lawsuit, which was dismissed on governmental immunity grounds. Indeed, the petition substantively replicated petitioner’s prior complaint and sought dam *397 ages “including, but not limited to, all of those damages set forth in the Michigan Wrongful Death Statute.” (Citation omitted.) Through her civil contempt petition, then, petitioner plainly seeks compensatory damages for Bradley’s death. Thus, her civil contempt petition seeks to impose tort liability.[69]
Had petitioner sought to invoke the probate court’s inherent contempt powers, i.e., to fine or imprison a contemnor, or had petitioner otherwise established the applicability of an exception to governmental immunity, then petitioner’s claim might have survived summary disposition. However, petitioner’s civil contempt petition did not invoke the court’s inherent powers of contempt, and she concedes that none of the GTLA’s exceptions are applicable. Consequently, because a civil contempt petition seeking indemnification damages under MCL 600.1721 seeks to impose tort liability, and respondent is immune from tort liability, petitioner’s claim is barred by governmental immunity under MCL 691.1407(1). Respondent is therefore entitled to summary disposition under MCR 2.116(C)(7).
IV .CONCLUSION
Consistent with the Legislature’s intent, our decision clarifies that the phrase “tort liability” as used in MCL 691.1407(1) encompasses all legal responsibility arising from noncontractual civil wrongs for which a remedy may be obtained in the form of compensatory damages. We further recognize that the plain language of MCL 600.1721 authorizes an award of indemnification damages to remedy a noncontractual civil wrong and, thus, *398 falls squarely within the meaning of “tort liability.” Because MCL 691.1407(1) immunizes governmental agencies from tort liability, governmental entities are immune from civil contempt petitions seeking indemnification damages. Petitioner has pleaded such a claim here and because she has not otherwise established the applicability of an exception to the GTLA, respondent is entitled to immunity under MCL 691.1407(1). We reverse the judgment of the Court of Appeals and remand this case to the probate court for entry of an order granting summary disposition in favor of respondent.
Young, C.J., and Markman, Zahra, and Viviano, JJ., concurred with Kelly, J.

 The investigation revealed that the sergeant who initially received the order could not execute it because she was on duty alone. She passed it onto the next sergeant who, in turn, assigned it to a deputy. The deputy, waylaid by other police business, passed the order to another officer who indicated that the order would be executed the following day. The order eventually came to rest at a police substation where it remained until the internal investigator found it on August 25, 2004. The investigation report indicated that “it appears as though [the officers] were all somewhat cognizant that the [order] was there; however, no one took initiative to either execute the [order] or access the computer to ascertain if the [order] had been served.”

 Both the complaint and petition alleged that respondent “failed and refused to execute the Order issued by the Kent County Probate Court notwithstanding its mandate, delivery of the Order to [respondent], and the repeated inquiry regarding execution of the Order.”

 Respondent also alleged that (1) petitioner failed to submit an affidavit from a person witnessing the contemptuous act as required by MCR 3.606(A), (2) respondent was not a legal entity capable of being sued, and (3) petitioner failed to show either a willful violation of the probate court order or the requisite causal link between the alleged contempt and Bradley’s suicide as required by MCL 600.1701. These arguments are not before this Court.

 Tate v Grand Rapids, 256 Mich App 656, 660; 671 NW2d 84 (2003).

 In re Bradley Estate, 296 Mich App 31; 815 NW2d 799 (2012).

 Id. at 38-39.

 Tate, 256 Mich App at 660-661.

 Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 647-648; 363 NW2d 641 (1984).

 In re Bradley Estate, 296 Mich App at 38-39.

 Id. at 39 (citation omitted).

 In re Bradley Estate, 493 Mich 866 (2012).

 Maiden v Rozwood, 461 Mich 109, 118; 597 NW2d 817 (1999).

 Glancy v City of Roseville, 457 Mich 580, 583; 577 NW2d 897 (1998).

 Odom v Wayne Co, 482 Mich 459, 478-79; 760 NW2d 217 (2008).

 Driver v Naini, 490 Mich 239, 246; 802 NW2d 311 (2011).

 Id. at 246-247.

 MCL 8.3a.

 Stone v Williamson, 482 Mich 144, 170; 753 NW2d 106 (2008) (opinion by Cavanagh, J.).

 Ross, 420 Mich at 598.

 Emphasis added. Likewise, individual governmental officers and employees may be entitled to immunity from “tort liability.” See MCL 691.1407(2) and (5).

 See Mack v Detroit, 467 Mich 186, 195; 649 NW2d 47 (2002). The statutory exceptions contained in the GTLA are: (1) the highway exception, MCL 691.1402, (2) the motor vehicle exception, MCL 691.1405, (3) the public building exception, MCL 691.1406, (4) the governmental hospital exception, MCL 691.1407(4), (5) the proprietary function exception, MCL 691.1413, and (6) the sewage system event exception, MCL 691.1417.

 In re Contempt of Dougherty, 429 Mich 81, 91 n 14; 413 NW2d 392 (1987), citing Const 1963, art 6, § 1.

 MCL 600.1701 (emphasis added). See also MCL 600.1715(2) (providing punishment for contemptuous conduct consisting of “the omission to perform some act or duty....”).

 See also MCL 600.1715(1), which generally limits the fine for contempt to not more than $7,500 and the term of imprisonment to no more than 93 days.

 A contempt proceeding seeking indemnification damages is a civil contempt proceeding. In re Contempt of Dougherty, 429 Mich at 111 (“A proper civil contempt proceeding [may] seek[] ... to compensate the complainant for actual loss.”).

 MCL 600.1721.

 Tate, 256 Mich App at 658.

 Id. at 659.

 Id. at 660. Consistent with this definition, the Court of Appeals explained that “strict liability is based on tort law and may result in tort liability, i.e., civil liability for wrongful conduct.” Id.

 As Sir Edward Coke explained, “wrong or injury is in French aptly called tort; because injury and wrong is wrested or crooked, being contrary to that which is right and straight.” I Coke, The First Part of the Institutes of the Laws of England (Butler’s 1st American ed, 1853), p 158b.

 See Sinclair v Brougham, [1914] AC 398 (HL), 415 (1914) (Viscount Haldane, LC) (“[B]roadly speaking, so far as proceedings in personam are concerned, the common law of England really recognises (unlike the Roman law) only actions of two classes, those founded on contract and those founded on tort.”); id. at 432 (Lord Dunedin) (“The *382 English common law has various actions which, under a classification which I understand to be really one of modern growth, are divided into actions in respect of contract and of tort.”); Bryant v Herbert, 3 CPD 389, 390 (1878) (Bramwell, LJ) (“One may observe there is no middle term; the statute supposes all actions are founded either on contract or on tort. So that it is tort, if not contract, contract if not tort.”). These English common-law cases are consistent with the understanding of tort espoused by Sir William Blackstone in his 1771 Commentaries, which make the same distinction:
Personal actions are such whereby a man claims a debt, or personal duty, or damages in lieu thereof: and, likewise, whereby a man claims a satisfaction in damages for some injury done to his person or property. The former are said to be founded on contracts, the latter upon torts or wrongs .... Of the former nature are all actions upon debt or promises; of the latter all actions for trespasses, nuisances, assaults, defamatory words and the like. [3 Blackstone, Commentaries on the Laws of England (Jones ed., 1976), p *117.]

 Turner v Stallibrass, 1 QB 56, 58 (1898) (A.L. Smith, LJ). See also id. at 59 (Rigby, LJ) (“The rule is that, if the plaintiff, in order to shew [sic] a cause of action, must rely on a contract, the action is one founded on contract; otherwise it is one of tort.”).

 As noted, this understanding of a tort is reflected in Sir William Blackstone’s Commentaries. Aside from recognizing that only two types of civil wrongs exist, Blackstone’s Commentaries also repeatedly confirm that tort actions involve a particular type of compensation— compensatory damages. See 3 Blackstone, p *138 (stating that “[t]he satisfactory remedy for this injury of false imprisonment” is that “the party shall recover damages for the injury he has received”); 3 Blackstone, pp **145-146 (stating that the proper remedy for the wrongful taking of goods is “the restitution of the goods themselves so wrongfully taken, with damages for the loss sustained by such unjust invasion,” and that the law in this regard “contents itself in general with restoring, not the thing itself, but a pecuniary equivalent to the party injured; by giving him a satisfaction in damages”); 3 Blackstone, p *220 (stating that when a private person suffers damage by a public nuisance, the remedies by suit are “[b]y action on the case for damages; in which the party injured shall only recover satisfaction for the injury sustained; but cannot thereby remove the nuisance”).

 As former Chief Justice of the Michigan Supreme Court Thomas M. Cooley recognized in Cooley, A Treatise on the Law of Torts (2d ed, 1888), p 2, “It is customary in the law to arrange the wrongs for which individuals may demand legal redress into two classes: the first embracing those which consist in a mere breach of contract, and the second those which arise independent of contract.”

 Churchill v Howe, 186 Mich 107; 152 NW 989 (1915).

 Id. at 111, 114 (citation and quotation marks omitted).

 See, e.g., O’Neill v James, 138 Mich 567, 573; 101 NW 828 (1904) (quoting caselaw stating that a party who commits a wrong independent of contract “brings himself within the operation of a principle of the law of torts”) (citation and quotation marks omitted); Hart v Ludwig, 347 Mich 559, 563; 79 NW2d 895 (1956) (approvingly quoting caselaw stating that as a general rule, to support a cause of action in tort, there “must be some breach of duty distinct from breach of contract”) (citation and quotation marks omitted); Phillips v Butterball Farms Co, Inc (After Second Remand), 448 Mich 239, 246-247; 531 NW2d 144 (1995) (holding that the duty not to retaliate against an employee for filing a workers’ compensation claim arises independently from the employment contract and thus sounds in tort).

 Stillson v Gibbs, 53 Mich 280, 284; 18 NW 815 (1884) (“The purpose of an action for tort is to recover the damages which the plaintiff has sustained from an injury done him by the defendant.”); Kalembach v Michigan Cent R Co, 87 Mich 509, 524; 49 NW 1082 (1891) (McGrath, J., dissenting) (recognizing that recovery for a tort requires “a wrong as well as damage”).

 Wilson v Bowen, 64 Mich 133, 141; 31 NW 81 (1887).

 MCL 8.3a; Ford Motor Co v City of Woodhaven, 475 Mich 425, 439; 716 NW2d 247 (2006) (“[C]ommon-law meanings are assumed to apply ... in the absence of evidence to indicate contrary meaning.”) (citation and quotation marks omitted). This definition is consistent with modern authorities’ understanding of the term “tort” as “[a] civil wrong, other than breach of contract, for which a remedy may be obtained, [usually] in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another.” Black’s Law Dictionary (9th ed); see also Prosser & Keeton, Torts (5th ed), § 1, p 2.

 Random House Webster’s College Dictionary (2001). Similarly, Black’s Law Dictionary (7th ed) defines “liability” as “[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment” and as “a financial or pecuniary obligation^]”

 Random House Webster’s College Dictionary (2001).

 Petitioner argues that this understanding of tort liability is overly inclusive, but offers no alternative definition for the term “tort.” More *386 over, while our definition of “tort” is stated in broad terms, it is consistent with the common-law understanding of that term as adopted by our Legislature in MCL 691.1407(1).

 In re Bradley Estate, 296 Mich App at 39.

 Ross, 420 Mich at 647.

 Id. at 647-648 (emphasis added).

 Id. at 647-648; id. at 693-694 (opinion by Levin, J.) (“The language of [MCL 691.1407(1)], however, speaks only to immunity from tort liability; it does not grant immunity from contract claims.”).

 Ross, 420 Mich at 647-648.

 To follow petitioner’s suggestion, which Justice McCormack also appears to advocate, would exalt form over substance when, instead, we have long recognized that a party’s choice of label for a cause of action is not dispositive and “the gravamen of [a] plaintiffs action is determined by considering the entire claim.” Maiden, 461 Mich at 135. Moreover, we have held on numerous occasions that some causes of action that are not traditional torts nonetheless impose tort liability within the meaning of the GTLA. See, e.g., Donajkowski v Alpena Power Co, 460 Mich 243, 247; 596 NW2d 574 (1999) (sex discrimination in violation of the Civil Rights Act); Phillips, 448 Mich at 248-249 (retaliatory discharge in violation of Worker’s Disability Compensation Act); Loweke v Ann Arbor Ceiling & Partition Co, LLC, 489 Mich 157, 165; 809 NW2d 553 (2011) (statutory duties may give rise to tort claim); see also Cuddington v United Health Servs, Inc, 298 Mich App 264, 275; 826 NW2d 519 (2012) (statutory *388 “retaliation torts”); 4041-49 WMaple Condo Ass’n v Countrywide Home Loans, Inc, 282 Mich App 452, 459; 768 NW2d 88 (2009) (failure to provide notice under foreclosure statute).

 In re Bradley Estate, 296 Mich App at 39.

 Indeed, to ignore the type of the damages sought would be to ignore the correlation between the wrong alleged and the available remedy. See Nat’l Copper Co v Minnesota Mining Co, 57 Mich 83, 93; 23 NW 781 (1885) (“[D]amage alone does not give a right of action; there must he a concurrence of wrong and damage.”). As we have explained, tort damages traditionally take the form of compensatory damages. See, e.g., Wilson, 64 Mich at 141. Although other remedies might be available in some circumstances, “ ‘an action for damages is the essential remedy for a tort,’ ” and “ ‘in all such cases it is solely by virtue of the right to damages that the wrong complained of is to he classed as a tort.’ ” Prosser & Keeton, Torts (5th ed), § 1, p 2 n 6, quoting Salmond, Law of Torts (12th ed), p 9.

 Justice McCormack pens an eloquent and engaging discussion of the sui generis nature of contempt, one that we do not necessarily disagree with regarding contempt. Where we do differ, however, is in our belief that this case presents a more nuanced issue, namely whether a petitioner can recast a wrongful death claim that is barred by the GTLA as a claim for civil contempt and obtain indemnification damages under MCL 600.1721, which are exactly the same as those damages sought under the wrongful death statute. We see the issue differently, but have not “confuse[d] legal categories” in the least.

 In that instance, we emphasize that the plaintiff would be limited to the recovery of contract damages. If a plaintiff seeks the recovery of tort damages stemming from the breach of a contractual duly, then the plaintiffs claim would be insufficient as a matter of law under MCR 2.116(C)(8).

 This step of the analysis is fundamental to determining whether an action involving a noncontractual civil wrong seeks to impose tort liability. This is because, in some instances, a noncontractual civil wrong might exist, but instead of seeking compensation to remedy the harm, the plaintiff elects some other remedy, thus rendering governmental immunity inapplicable. For example, a plaintiff may ask a court to enforce his or her rights under the law. See Lash v Traverse City, 479 Mich 180, 196; 735 NW2d 628 (2007) (recognizing that governmental immunity barred a plaintiffs private cause of action seeking monetary damages for an alleged statutory violation, but noting that the plaintiff could enforce the statute by seeking declaratory or injunctive relief); Hadfield v Oakland Co Drain Comm’r, 430 Mich 139, 152 n 5; 422 NW2d 205 (1988) (opinion by Brickley, J.) (“Generally, we do not view actions seeking only equitable relief, such as abatement or injunction, as falling within the purview of governmental immunity.”), overruled on other grounds by Pohutski v City of Allen Park, 465 Mich 675 (2002).

 MCL 600.1721 (emphasis added).

 Holland v Weed, 87 Mich 584, 587-588; 49 NW 877 (1891).

 Emphasis added. The statute was substantially similar when Holland was decided. It provided:
If an actual loss or injury has been produced to any party, by the misconduct alleged, the court shall order a sufficient sum to be paid by the defendant to such party to indemnify him, and to satisfy his costs and expenses, instead of imposing a fine upon such defendant; and in such case, the payment and acceptance of such sum shall be an absolute bar to any action by such aggrieved party, to recover damages for such injury or loss. [How Stat § 7277.]

 “Indemnify” is commonly understood to mean “to compensate for damage or loss sustained, expense incurred[.]” Random House Webster’s College Dictionary (2001). And we have previously characterized the relief provided under MCL 600.1721 as compensatory. See In re Contempt of Dougherty, 429 Mich at 98.

 Justice Cavanagh posits that a civil contempt petition seeking indemnification damages under MCL 600.1721 does not impose tort liability because the liability imposed arises, not from the breach of a “tort duty,” but from the breach of an “obligation owed to the court.” The Legislature, however, did not use the phrase “tort duty” in MCL 691.1407(1), but instead used the phrase “tort liability” thereby invoking consideration of all noncontractual civil wrongs consistent with the common-law meaning of “tort.” Moreover, while Justice Cavanagh agrees that the purpose of the relief sought is relevant to determining whether tort liability exists, he ignores that MCL 600.1721 expressly permits an award of compensatory damages to “any person” who suffered an injury as a result of the contemptuous act and does not award indemnification damages to the court, which is the party owed a duty under Justice Cavanagh’s analysis. Stated otherwise, a civil contempt petition seeking indemnification damages under MCL 600.1721 does not seek to redress the harm a court may have suffered as a result of the contemptuous act; rather, such a petition seeks to compensate the person who suffered injury from that civil wrong, and therefore the petition is squarely within the meaning of “tort liability.”

 Justice McCormack does not analyze the express statutory language of MCL 600.1721 and instead relies on a series of inferences to discern the meaning of the law. Specifically, Justice McCormack reads MCL 600.1701(c) as an express indication that the Legislature intended to waive any claim that government eontemnors are immune from liability for civil contempt indemnification damages. However, the express statutory language of MCL 600.1701 does not include “defendant,” as that term is used in MCL 600.1721, among the listed state actors, and we would draw no such inference. Compare MCL 600.1721 and MCL 600.1701 with other statutes expressly waiving governmental immunity, including the Elliot-Larsen Civil Rights Act, MCL 37.2103(g), MCL 37.2201(a), and MCL 37.2202 (defining “employer” to expressly include state actors who are in turn liable for certain discriminatory conduct); and the Persons with Disabilities Civil Rights Act, MCL 37.1103(g), MCL 37.1201(b), and MCL 37.1202 (same). Nor do we view MCL 691.1407(6), as Justice McCormack does, to inform the meaning of “tort liability” used in MCL 691.1407(1). MCL 691.1407(6), which grants immunity to guardian ad litems from “civil liability,” is simply not implicated in this case. We also do not believe the Legislature’s placement of the contempt statutes in the RJA has any relevance to the meaning of “tort liability.”

 Contrary to our holding, petitioner asserts that her contempt petition cannot be classified as a tort because there is not “a hint anywhere” in Michigan jurisprudence suggesting that contempt is a tort. Our discussion in Holland, 87 Mich at 587-588, referred to earlier in this opinion, suggests otherwise. Moreover, petitioner makes this argument without any reference to the statutory language of MCL 600.1721, which as we have explained supports the conclusion that a civil contempt claim seeking indemnification damages imposes tort liability. In any case, we *394 are not alone in recognizing that a civil contempt claim asking for compensatory damages imposes tort liability. See, e.g., Dodson v Dodson, 380 Md 438, 453; 845 A2d 1194 (2004) (“This litigation, although labeled a civil contempt action, was in essence a tort suit for money damages ....”); Parker v United States, 153 F2d 66, 70 (CA 1, 1946) (“An order imposing a compensatory fine in a civil contempt proceeding is ... somewhat analogous to a tort judgment for damages caused by wrongful conduct.”); Vuitton et Fils SA v Carousel Handbags, 592 F2d 126, 130 (CA 2, 1979) (noting that imposition of a compensatory fine for civil contempt is analogous to a tort judgment for damages); Thompson v Cleland, 782 F2d 719, 722 (CA 7, 1986) (noting the same).

 The Legislature authorized the award of compensatory damages in the contempt context with the enactment of 1846 RS, ch 121, § 21, the original predecessor of MCL 600.1721.

 See Const 1963, art 6, § 1; Langdon v Judges of Wayne Circuit Court, 76 Mich 358, 367; 43 NW 310 (1889) (“The [contempt] statutes are in affirmation of the common-law power of courts to punish for con-tempts ....”).

 As this Court explained in In re Huff, 352 Mich 402, 415-416; 91 NW2d 613 (1958):
There is inherent power in the courts, to the full extent that it existed in the courts of England at the common law,... to adjudge and punish for contempt.... Such power, being inherent and a part of the judicial power of constitutional courts, cannot be limited or taken away by act of the legislature nor is it dependent on legislative provision for its validity or procedures to effectuate it. [Citation omitted.]

 See Nichols v Judge of Superior Court of Grand Rapids, 130 Mich 187, 192-195; 89 NW 691 (1902) (indicating that the Legislature cannot determine what acts constitute contempt or constrain courts’ power to punish those contemptuous acts, but that it may prescribe certain punishments); Langdon, 76 Mich at 367 (recognizing that the Legislature cannot curtail courts’ contempt powers, but that it may “regulateG the mode of proceeding and prescribe!] what punishment may be inflicted”). Justice McCormack concedes that the Legislature can regulate the courts’ contempt powers. As Nichols and Langdon reflect, this regulation includes the ability to prescribe certain punishments, like that in MCL 600.1721, as long as the regulation does not curtail courts’ inherent power to punish contemptuous acts. As such, injection of separation of powers principles is misplaced. Likewise, the suggestion that our decision has “cede[d]” judicial power is overstated because Michigan courts have never had an inherent power to punish contempt through an award of compensatory damages.

 Having concluded that no Michigan court possesses inherent power to award compensatory damages relating to contempt, we need not address the parties’ disagreement whether the probate court, the powers of which are controlled by the Legislature, lacks the inherent power to punish contempt through fine or imprisonment.

 By stating “[e]ven if Michigan did not recognize a wrongful death action, hypothetically, respondent here could still have been held in contempt,” Justice McCormack errs in insinuating that a Court’s inherent contempt powers include the ability to award compensatory damages to a third party for loss or injury. The fact that the Legislature added the ability to impose tort liability to the Court’s powers as a possible remedy for contempt does not resolve the issue whether that particular remedy may be used against governmental agencies in the face of the GTLA. If MCL 600.1721 did not exist, then Justice McCormack’s point would be valid.

 MCL 600.2922.

 We do not disagree with the concern that this Court must safeguard the power of the judicial branch, but note that this case did not involve the willful violation of a court order and the consequential offense to the issuing court, which is the very essence of contempt of court.