*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERICA MAYS,

        Plaintiff-Appellant,

v

GJOK PETER GJOKAJ and
DOMGJONI GROUP, LLC,

        Defendants-Appellees

and

ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
March 13, 2026
10:37 AM

No. 375212
Oakland Circuit Court
LC No. 23-203641-NI

Before: RIORDAN, P.J., and O'BRIEN and YOUNG, JJ.

PER CURIAM.

In this third-party automobile negligence action, plaintiff, Erica Mays, appeals the trial court's order granting summary disposition in favor of defendants, Gjok Peter Gjokaj and Domgjoni Group, LLC (collectively, "defendants"), under MCR 2.116(C)(10). The trial court concluded that Mays failed to raise a genuine issue of material fact as to whether she suffered a serious impairment of a bodily function under MCL 500.3135. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

While driving her car on April 21, 2023, Mays was rear ended by Gjokaj. Emergency Medical Services (EMS) visited the accident site and checked on both Mays and Gjokaj, but neither required medical attention nor did they report any injuries at this time. Gjokaj's vehicle was damaged and towed from the scene, but Mays was able to leave in her car.

Two days later, Mays went to the emergency department at Ascension Providence Hospital complaining of neck and shoulder pain that developed after the accident. Specifically, Mays

-1-

complained of a "seatbelt sign" injury with pain over her sternum radiating into her left shoulder, and neck pain with tingling down the back of her left arm. The hospital records indicate Mays was sent for chest and shoulder x-rays, which appeared normal. Under "final impression," the hospital records noted that Mays had "cervicalgia," a general term for neck pain.[1] Mays was discharged as medically stable and the hospital records noted there was "[n]o need for further escalation of care." Although Mays later testified that doctors told her during this visit "that it looked like [she] probably had some muscle tears but no broken bones," none of her medical records reflect the same. Mays was sent home with a prescription for Motrin and a muscle relaxer.

The next day, Mays presented to Advanced Spine and Headache and met with a chiropractor, Dr. Alex Meltser. Mays complained of left shoulder, neck, upper back, and low back pain, as well as dizziness and forgetfulness. Dr. Meltser diagnosed Mays with acute pain due to trauma; cervical, thoracic, and lumbar sprain; traumatic arthropathy; cervical spine segmental dysfunction; myalgia and myositis; and muscle spasm. Dr. Meltser created and implemented a course of chiropractic care designed to improve range of motion, function, activities of daily living, and to decrease pain and spasms.[2] Mays later testified that Meltser told her that she "had three slipped disks in [her] spine, and that … was causing [her] to have a slight limp" but she never stated whether Meltser connected the slipped discs to her accident. Melster's notes from the visit did not attribute the slipped discs or any other issues to her accident either.

On May 9, 2023, Mays saw Dr. Paul Shapiro at Michigan Orthopedic Surgeons for evaluation of her continued left shoulder pain. Dr. Shapiro's notes from this visit stated that Mays suffered "[l]eft shoulder pain from recent MVA with possible internal derangement (rotator cuff versus labral tear)" and recommended that Mays get an MRI on the area before determining treatment. On May 11, 2023, Mays had an MRI, which revealed "[m]ild tendinosis[3] involving the distal supraspinatus tendon with no evidence of tearing seen." The medical record noted that "[t]he remainder of the examination appears unremarkable." Specifically, the MRI showed:

- No acute osseous pathology is seen.
- No acromioclavicular joint abnormality is seen.
- The glenohumeral joint has normal articular cartilage.
- No labral tearing is seen.
- The supraspinatus tendon shows mild distal tendinosis with no evidence of tearing present.
- The subscapularis and infraspinatus tendons are intact.
- The biceps tendon has normal position and morphology.

---

[1] See *Pepaj v Allstate Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued March 18, 2021 (Docket No. 352498), p 3 (explaining that cervicalgia "simply means neck pain").
[2] Mays received chiropractic treatment at Advanced Spine and Headache Center from April 24, 2023, to April 17, 2024.
[3] Cleveland Clinic, *Tendinosis* <https://my.clevelandclinic.org/health/diseases/tendinosis> (accessed March 9, 2026) (Tendinosis is a "degenerative" condition that causes a tendon to "gradually break down").

The notes from this visit do not connect the tendinosis to the subject accident and found no other issues with Mays.

Mays obtained another MRI on June 9, 2023, with Dr. Jason Lord. The MRI scan focused on two areas: Mays' thoracic spine and her lumbar spine. Regarding the thoracic spine scan, Dr. Lord concluded, "[t]here is mild curvature of the thoracic spine. There is no canal or foraminal stenosis. No cord lesion is identified." As for the lumbar spine scan, Dr. Lord's notes provided:

1. L4-5 diffuse disc bulge is present. There is no canal stenosis identified. The neural foramina demonstrate no significant narrowing.

2. L5-S1 slight disc bulge is present. There is no canal stenosis identified. The neural foramina demonstrate no significant narrowing.

3. Mild curvature of the lumbar spine is present. There is no fracture identified.

In Dr. Lord's notes, he made no conclusion that the bulging discs resulted from the subject accident.

On November 2, 2023, Mays filed this action against Allstate Property and Casualty Insurance Company and defendants.[4] On June 8, 2024, Mays participated in an independent medical examination with Dr. Robert Travis. Under "Impression" in the notes from this visit, it stated: "1. Subjective posterior neck and occasionally low back pain. 2. No evidence of residential traumatic pathology." Dr. Travis' notes provided: "[Mays'] complaints are objectively negative, and I believe unrelated to the accident in question." The notes further included the question, "Does the claimant have objective findings?" To which, Travis marked, "No."

At her deposition, Mays testified that she was out of work at her job as a nurse for one month because of the accident. When she returned to work, Mays only performed "light duty" for a month before returning to her regular routine. Mays needed help with bathing for two months, and her friend Mark Jackson assisted with that. Jackson also drove Mays to her appointments and assisted with household chores. Mays testified that the accident interfered with hobbies, like weightlifting and playing basketball with her son. She also testified that driving became more difficult, as she could now only drive with one hand. According to Mays, she is "just generally weaker" and it "takes [her] longer to do simple things that [she] could do faster before." She experiences difficulty in pushing the medical cart at work from room to room now but she "work[s] through the pain." Finally, Mays testified that the accident made her feel anxious and initially gave her recurring nightmares, but that it ultimately is "making [her] a better person and better driver."

---

[4] Mays asserted breach-of-contract, declaratory-relief, and uninsured/underinsured claims against Allstate; a negligence claim against Gjokaj; and sought damages under owner-liability, respondeat superior, and negligent-entrustment claims against Domgjoni Group, LLC, as the owner of Gjokaj's vehicle.

When asked about her symptoms, Mays explained that she experiences "pain off and on" but that she is "able to work through" it. She uses pain patches on both shoulders, her lower back, knee, and leg when she works her nursing shifts and takes over the counter Motrin as needed for pain. Before the accident, Mays could "stand for hours, walk for hours, no problem[,]" but now she needs to take more frequent breaks at work to sit and let her body rest. She also wears a back brace now while working for extra support. Mays testified that she needs help to lift and reposition her patients, and that she can no longer lift or push heavy weight on her left side.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing there can be no tort liability because Mays "did not suffer an objectively manifested impairment of an important body function that affected her ability to lead her normal life" and thus cannot satisfy MCL 500.3135(5). Without holding oral argument, the trial court issued an order and opinion granting the motion. The trial court found there were questions of fact regarding the first and second prong of the applicable three-part *McCormick*[5] test:

> Here, there is a factual dispute concerning the nature and extent of the Plaintiffs injuries, but it is not material because the Plaintiff cannot show that her general ability to lead her normal life has been affected. First, the Court concludes that a question of fact remains as to whether the Plaintiff suffered an objectively manifested impairment of an important body function. The Plaintiff has presented documentary support that was not contradicted by Defendant, evidencing the existence of muscle spasms and pain that a physician (Dr. Park) noted limited his ability to complete a spinal exam and therefore the symptom of pain was perceivable.

But the trial court ultimately granted summary disposition because it found that the third prong of *McCormick* was not met:

> However, the Court finds that Plaintiff is unable to meet the third prong of *McCormick*—an impairment which affects the person's general ability to lead his or her normal life. She testified that she missed work for three weeks and that she experiences pain engaging in daily activities. However, overall, the Plaintiff has not shown that her general ability to lead her normal life was affected.

Mays moved for reconsideration, which was denied. The trial court entered a stipulated order of dismissal, dismissing Allstate and closing the case. This appeal followed.

## II. ANALYSIS

Mays argues that issues of material fact remain as to whether she suffered injury under MCL 500.3135. For the reasons set forth below, we affirm the trial court.

---

[5] *McCormick v Carrier*, 487 Mich 180, 195; 795 NW2d 517 (2010).

## A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Under MCR 2.116(C)(10), summary disposition is appropriate "if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018) (quotation marks and citation omitted). "Because a motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint, the circuit court must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "Courts are liberal in finding a factual dispute sufficient to withstand summary disposition." *Patrick*, 322 Mich App at 605 (quotation marks and citation omitted). A court may not "make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Id*. at 605-606 (quotation marks and citation omitted).

## B. THE TRIAL COURT PROPERLY GRANTED SUMMARY DISPOSITION TO DEFENDANTS

Mays argues that the trial court erred in granting defendants' motion because objective medical evidence, including MRI results, support that she suffered a threshold injury as a result of the accident. Although we believe a question of fact remains as to whether Mays suffered injury, we find no error in the trial court's decision to grant summary disposition because Mays failed to show that her injuries were *caused* by the accident.[6]

---

[6] Throughout her brief, Mays makes various references to information contained in the medical records relating to her injuries but does not provide citations to specific pages. Although Mays generally directs this Court to certain exhibits attached to her brief, her exhibits are not clearly labeled, thus requiring this Court to sift through 148 pages of records with no further instruction. As such, Mays has abandoned her argument on appeal. MCR 7.212(C)(6) provides that a statement of facts "must contain, with specific page references to the transcript, the pleadings, or other document or paper filed with the trial court . . . (c) the substance of the proof in sufficient detail to make it intelligible, indicating the facts that are in controversy and those that are not." Drawing on this court rule, this Court has held, "[f]acts stated must be supported by *specific page references* to the transcript, the pleadings, or other document or paper filed with the trial court. We will not search the record for factual support for plaintiffs' claims." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004) (emphasis added; cleaned up). A party abandons an argument when they fail to satisfy this standard. *Barrow v Detroit Election Comm'n*, 305 Mich App 649, 683; 854 NW2d 489 (2014) (holding that, because the plaintiffs failed to cite specific evidence to support their claims, the argument was abandoned). We nevertheless address Mays' arguments and find they fail on the merits.

Under MCL 500.3135, "[a] person remains subject to tort liability for noneconomic loss *caused* by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). Serious impairment of a body function "means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5).

"On its face, the statutory language provides three prongs that are necessary to establish a 'serious impairment of body function': (1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195. In making the determination of whether a plaintiff has proven a serious impairment of a bodily function, "there is no bright-line rule or checklist to follow[.]" *Chouman v Home Owners Ins Co*, 293 Mich App 434, 441; 810 NW2d 88 (2011). Instead, "[w]hether someone has suffered a serious impairment is 'inherently fact- and circumstance-specific and [the analysis] must be conducted on a case-by-case basis.' " *Id.* quoting *McCormick*, 487 Mich at 215. Because no two people are alike, "the extent to which a person's general ability to live his or her normal life is affected by an impairment is undoubtedly related to what the person's normal manner of living is . . . ." *McCormick*, 487 Mich at 202-203. As such, this inquiry is subjective. *Patrick*, 322 Mich App at 607.

As to the first prong, an objectively manifested impairment is one "that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *McCormick*, 487 Mich at 196. "Impaired" means the state of (1) "being weakened, diminished, or damaged," or (2) "functioning poorly or inadequately." *Id.* at 197 (quotation marks and citation omitted). Although medical testimony is not always required to make this showing, medical evidence such as a scan of an impairment will make it objectively manifested. *Jackson v Nelson*, 252 Mich App 643, 645, 650-651; 654 NW2d 604 (2002).

Second, the important-bodily-function inquiry is "an inherently subjective" one. *McCormick*, 487 Mich at 199. The inquiry turns on whether the bodily function "has great value, significance, or consequence," and the relationship of that function to the person's life must be considered. *Id.*

As for the third prong, to assess whether the impaired person's ability to lead his or her normal life has been affected, courts are to compare the person's life before and after the injury. *Nelson v Dubose*, 291 Mich App 496, 499; 806 NW2d 333 (2011). Important to making this comparison is the fact that "the statute merely requires that a person's general ability to lead his or her life has been *affected*, not destroyed." *McCormick*, 487 Mich at 202. Therefore, "courts should consider not only whether the impairment has led the person to completely cease a pre-incident activity or lifestyle element, but also whether, although a person is able to lead his or her pre-incident normal life, the person's general ability to do so was nonetheless affected." *Id.*

In addition to showing the three prongs of the *McCormick* test, a plaintiff seeking recovery under MCL 500.3135 must show that the accident *caused* her injuries. See *In re Carroll*, 300 Mich App 152, 171; 832 NW2d 276, 286 (2013) (citations omitted) ("[t]he claimed benefits must first be causally connected to the accidental bodily injury arising out of an automobile accident

and the injury itself must arise from the ownership, operation, maintenance, or use of a motor vehicle."). MCL 500.3135 is specifically titled "Tort liability for noneconomic loss . . . ." and tort liability inherently requires causation. See *In re Bradley Estate*, 494 Mich 367, 390; 835 NW2d 545 (2013) (tort liability requires showing "a legal duty, breach of that duty, causation, and injury.") MCL 500.3135 explicitly states that "[a] person remains subject to tort liability for noneconomic loss *caused* by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." Thus, without causation, any objective impairment is not subject to recovery.

To establish causation, a plaintiff must show either that the accident caused an injury or aggravated a pre-existing injury. *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000). A party will not satisfy their burden of causation if they merely show that defendant may have caused their injuries. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004). "Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he 'set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect.' " *Id*. A theory of causation must be rooted in facts that are in evidence, not merely a possible or plausible explanation. *Id*.

The trial court granted defendants' motion for summary disposition on the basis that Mays did not meet the third prong of *McCormick*—showing that her impairment affected her general ability to lead her normal life. The trial court found Mays' testimony that "she missed work for three weeks and that she experiences pain engaging in daily activities" insufficient to create a question of fact as to whether her ability to lead a normal life was impaired. However, Mays' testimony included much more than this. Mays presented evidence that she suffers from two bulging discs, a curved spine, and a degenerative condition. In her deposition, Mays provided how these impairments have affected her life. Specifically, Mays testified that she missed a month of work, suffers from chronic pain, has difficulty performing her job duties, no longer enjoys hobbies like weightlifting and playing basketball with her son, and generally feels weaker. She also testified that she needs to take more frequent breaks at work to rest and has to stretch often.

A person's ability to lead his or her general life does not have to be destroyed in order to constitute a threshold injury; it only needs to have been affected, and here the evidence allows for an inference that Mays' general ability to lead her normal life was affected, though not completely destroyed. See *McCormick*, 487 Mich at 202. As such, we find that Mays' testimony created a genuine issue of material fact as to whether her impairment affected her general ability to lead her normal life and that the trial court erred in holding otherwise.

Nonetheless, we affirm, as absent from Mays' proofs, is any evidence that causally connects her injuries to the subject accident. To begin, at the scene of the accident, Mays did not report any injuries, and EMS did not identify any. Similarly, when she visited the hospital two days after the accident, the medical records did not identify objective impairments stemming from the accident. Mays' only diagnosis was cervicalgia (neck pain), with no reference to the accident. A temporal relationship is insufficient, by itself, to establish the requisite causal nexus. *Lowery v Enbridge Energy Ltd Partnership*, 500 Mich 1034, 1034-1035; 898 NW2d 906 (2017). A few weeks after the accident, Mays' chiropractor diagnosed her with slipped discs in her spine, and Dr. Lord found disc bulges at two locations and some evidence of a mild curvature of the spine. However, neither of the physicians connected the slipped or bulging discs to the automobile

accident. The same is true of Mays' mild tendinosis diagnosis that was made following her MRI—no evidence connected the condition to the subject accident. Finally, at the independent medical examination, that doctor explicitly noted that "[Mays'] complaints are objectively negative, and I believe unrelated to the accident in question."

Because Mays presented no evidence to show that the subject accident caused her impairments, the trial court properly granted summary disposition to defendants.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Adrienne N. Young