*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF HIGHLAND PARK,

        Plaintiff-Appellee,

v

STATE LAND BANK AUTHORITY,

        Defendant-Appellant.

FOR PUBLICATION
February 17, 2022
9:25 a.m.

No. 355948
Court of Claims
LC No. 19-000129-MZ

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

In this action that involves the Land Bank Fast Track Act (LBFTA), MCL 124.751 *et seq*., defendant appeals as of right an order entered by the Court of Claims to the extent that it denied defendant's motion for partial summary disposition based on a claim of governmental immunity. We affirm.

## I. FACTUAL BACKGROUND

According to the complaint, plaintiff owned and operated a combined sewer system that transported stormwater runoff and sanitary sewage to a regional wastewater treatment facility. Plaintiff alleged that defendant owned over 300 properties within plaintiff's city limits, and that those properties generated a significant amount drainage and stormwater runoff that entered plaintiff's combined sewer system.

According to an affidavit provided by defendant, defendant owned 464 parcels within plaintiff's city limits since August 1, 2016, and only five of them were not tax-reverted. Per the affidavit, the tax-reverted parcels were transferred to defendant after tax foreclosure by the state of Michigan or the Wayne County Treasurer.

In July 2016, plaintiff enacted a "Drainage and Stormwater Billing Ordinance," which required property owners within plaintiff's city limits to pay for drainage and stormwater runoff conveyance and treatment services on the basis of the parcel's size and its "amount of pavement, building, vegetative cover . . . and other general landscaping." In August 2016, plaintiff began

-1-

billing all property owners within its city limits for drainage and stormwater services, and defendant failed to pay those monthly bills.

In August 2019, plaintiff filed its complaint, alleging "violation of drainage and stormwater billing ordinance." The parties filed cross-motions for summary disposition. Defendant argued that it was entitled to partial summary disposition because it was an involuntary landowner of all but five of the subject properties, and thus not subject to local charges because defendant retained the immunity available to the foreclosing entities, and that it was entitled to summary disposition of plaintiff's claims that arose before October 13, 2016, because plaintiff failed to file a timely notice of intent. Plaintiff argued that it was required by law to charge for water treatment services, that its drainage and stormwater charges were presumptively reasonable, and that its charges were not an unconstitutional tax.

The Court of Claims entered an order and opinion denying defendant's motion insofar as it was predicated on governmental immunity, but granting it in relation to how a portion of plaintiff's claim was time-barred, and granting plaintiff's motion for summary disposition. Defendant claimed an appeal of the portion of the court's order denying its claim of governmental immunity.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013).

"A motion for summary disposition under MCR 2.116(C)(10) tests the factual support of the plaintiff's claim and should be granted, as a matter of law, if no genuine issue of any material fact exists to warrant a trial." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 596-597; 865 NW2d 915 (2014).[1] "When evaluating a motion for summary disposition under MCR 2.116(C)(10), 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion. . . . Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.' " *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

"Generally, this Court reviews de novo '[t]he interpretation of statutes and court rules.' " *Simcor Constr, Inc v Trupp*, 322 Mich App 508, 513; 912 NW2d 216 (2018), quoting *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008) (alteration in original). "The availability of governmental immunity presents a question of law that is likewise reviewed de novo." *Progress Mich v Attorney General*, 506 Mich 74, 86; 954 NW2d 475 (2020). And "whether this Court has

---

[1] Defendant moved for summary disposition under MCR 2.116(C)(7) (immunity), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10), but the Court of Claims considered defendant's motion under MCR 2.116(C)(10) only.

jurisdiction is a question of law that this Court reviews de novo." *Chen v Wayne State Univ*, 284 Mich App 172, 191; 771 NW2d 820 (2009).

### III.  RELEVANT LEGAL PRINCIPLES AND STATUTES

As explained by our Supreme Court,

> The rules of statutory construction are well established.  The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature.  This task begins by examining the language of the statute itself.  The words of a statute provide the most reliable evidence of its intent. . . .  If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written.  No further judicial construction is required or permitted.  Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.
>
> In interpreting the statute at issue, we consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme.  As far as possible, effect should be given to every phrase, clause, and word in the statute.  The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended.  [*Sun Valley Foods Co v Ward*, 460 Mich 230, 236-237; 596 NW2d 119 (1999) (quotation marks and citations omitted).]

Defendant is a "a public body corporate and politic" created under the LBFTA.  MCL 124.765(1).  Defendant's purpose is to "acquire, assemble, dispose of, and quiet title" to property, including tax-reverted property, under the LBFTA.  MCL 124.752.  While the LBFTA places requirements on the use of defendant's funds,[2] MCL 124.764(1) provides that the LBFTA "shall be construed liberally" to effectuate the legislative intent and purposes of the act, and that the powers granted under the act "shall be broadly interpreted" to effectuate the legislative purpose of the act.

Under the LBFTA, defendant may acquire real or personal property in a number of ways, including by transfer, foreclosure, and purchase.  MCL 124.755(1).  Defendant may acquire property from a foreclosing governmental unit under The General Property Tax Act[3] (the GPTA). MCL 124.755(3)(b).  And defendant may

> hold and own in its name any property acquired by it or conveyed to it by this state, a foreclosing governmental unit, a local unit of government, an intergovernmental entity created under the laws of this state, or any other public or private person,

---

[2] MCL 124.758 pertains to the disposition of money received by a land bank, and MCL 124.768 pertains to a land bank fast track fund and the permitted uses of such a fund.

[3] MCL 211.1a *et seq.*

including, but not limited to, tax reverted property and property with or without clear title. [MCL 124.755(4).]

MCL 124.764(4) provides that if tax-reverted property, "the title to which involuntarily vested" in the state or a foreclosing governmental unit under the GPTA or in a qualified city under its charter or ordinances, is transferred to an authority such as defendant, then the transfer "shall be construed as an involuntary transfer of property to the authority." After such a transfer,

> the authority shall be deemed to have assumed any governmental immunity or other legal defenses of this state, the foreclosing governmental unit, or the local unit of government related to the property and the manner in which title to the property was held by this state or the local unit of government. [MCL 124.764(4).]

Under MCL 124.756(1), defendant is authorized to maintain "and take all other actions necessary to preserve the property it holds or owns."

The Revenue Bond Act of 1933 (RBA), MCL 141.101 *et seq.*, "authorized a locality to issue a limited type of bond for public improvements that would be repaid through revenue generated solely from the public improvement financed by the bond." *Hartfiel v Eastpointe*, 333 Mich App 438, 447; 960 NW2d 174 (2020) (quotation marks and citation omitted). "Water-supply and sewer systems are among the public improvements authorized under the RBA." *Id*.

## IV. GOVERNMENTAL IMMUNITY AND SCOPE OF THE APPEAL

Defendant argues that the Court of Claims erred by ruling that governmental immunity did not bar plaintiff's claim. We conclude that defendant's arguments do not in fact concern the application of governmental immunity, and thus lie outside of the scope of defendant's appeal by right.

"A court must continually question its jurisdiction at every stage of the proceeding." *Hodge v State Farm Mut Auto Ins Co*, 499 Mich 211, 234 n 11; 884 NW2d 238 (2016) (MARKMAN, J., concurring) (quotation marks and citation omitted). "Under the court rules, this Court has jurisdiction over appeals from a 'final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6) . . . .' " *Chen*, 284 Mich App at 192, quoting MCR 7.203(A)(1). MCR 7.202(6)(a)(*v*) provides that "an order denying governmental immunity to a governmental party, including a governmental agency, official, or employee under MCR 2.116(C)(7) or an order denying a motion for summary disposition under MCR 2.116(C)(10) based on a claim of governmental immunity" is a final order or final judgment. A claim of appeal of a final order or final judgment described by MCR 7.202(6)(a)(*v*) "is limited to the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1).

"Sovereign immunity and governmental immunity, while related concepts, are not synonymous." *Hannay v Dep't of Transp*, 497 Mich 45, 58; 860 NW2d 67 (2014). "Sovereign immunity refers to the immunity of the state from suit and from liability, while governmental immunity refers to the similar immunities enjoyed by the state's political subdivisions." *Id*. (quotation marks and citation omitted).

-4-

The Supreme Court has recognized that "the state is immune from suit unless, and only to the extent that, it consents to be sued," and that "the original Michigan rule held that the state was immune from all suits except to the extent that it consented to be sued in its courts." *Progress Mich*, 506 Mich at 87 (quotation marks and citation omitted). "The Legislature can, and has, abrogated the state's sovereign immunity by enacting legislation consenting to suit." *Id*. Thus, the doctrine of sovereign immunity in the state is presently "*a creature of the legislature*." *Blue Harvest, Inc v Dep't of Transp*, 288 Mich App 267, 274; 792 NW2d 798 (2010) (quotation marks and citations omitted).

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., replaced the " 'preexisting common-law concept of sovereign immunity.' " *Hannay*, 497 Mich at 59, quoting *In re Bradley Estate*, 494 Mich 367, 377-378; 835 NW2d 545 (2013). "The Legislature enacted the GTLA in 1964 after a series of court decisions began to erode the common-law rule of governmental immunity from tort liability." *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 326; 869 NW2d 635 (2015). The "GTLA restores governmental immunity in two ways," by abolishing common-law exceptions to governmental immunity from tort law, and mandating that, except as otherwise provided by the GTLA, governmental agencies are immune from tort liability while engaging in the exercise or discharge of governmental functions. *Id*.

"MCL 691.1407(1) codifies this common-law sovereign immunity concept and limits a governmental agency's[4] exposure to tort liability." *Hannay*, 497 Mich at 59 (quotation marks and citation omitted). The term " 'tort liability' as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *Bradley*, 494 Mich at 385.

However, the "GTLA does not bar a properly pleaded contract claim." *Id*. at 387. Neither does it bar an unjust-enrichment claim, which "sounds in neither tort nor contract and seeks restitution rather than compensatory damages." *Wright v Genesee Co*, 504 Mich 410, 423-424; 934 NW2d 805 (2019). "Quasi-contract doctrine is itself a subset of the law of unjust enrichment." *Id*. at 421.

Our Supreme Court has held that "the general rule is that services furnished by one municipality to another municipality are on a contractual basis and the acceptance of services implies a promise to pay therefor at the established rate." *Detroit v Highland Park*, 326 Mich 78, 99; 39 NW2d 325 (1949).

> There are two kinds of implied contracts; one implied in fact and the other implied in law. The first does not exist, unless the minds of the parties meet, by reason of words or conduct. The second is quasi or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be

---

[4] The GTLA defines "governmental agency" as "this state or a political subdivision," MCL 691.1401(a), defines "state" to include "this state and its agencies [and] departments," MCL 691.1401(g), and defines "political subdivision" to include "a municipal corporation" and a "county," MCL 691.1401(e).

accomplished even, in case no contract was intended. [*Id*. at 100 (quotation marks and citation omitted).]

In the Court of Claims, defendant moved for partial summary disposition of plaintiff's claim for unpaid drainage and stormwater charges for the great majority of the properties defendant owned within plaintiff's city limits. Defendant contended it was an involuntary owner of those parcels, and thus under MCL 124.764(4), it was entitled to the immunity provided to the state and foreclosing governmental units. Defendant cited *Harbor Watch Condo Ass'n v Emmet Co Treasurer*, 308 Mich App 380; 863 NW2d 745 (2014), for the proposition that a foreclosing governmental unit could not be held liable for assessments when performing a statutory obligation.

The Court of Claims concluded that *Harbor Watch* was distinguishable and rejected defendant's argument. The court noted that *Harbor Watch* pertained to condominium assessments and that the decision in that case relied on the conclusion that the county treasurer was barred by statute from paying for condominium assessments, and concluded that condominium assessments were not akin to charges for utility services. The Court of Claims explained that the LBFTA did not bar defendant from paying plaintiff's drainage and stormwater charges, and that defendant was authorized by the LBFTA to act to preserve the value of the properties it held.

The court further explained that, under the RBA, plaintiff was barred from providing free services for stormwater charges to a public corporation such as defendant, and that even if defendant stood in the shoes of a foreclosing entity, those entities also fell within the RBA's definition of public corporation. The court rejected defendant's contention that it did not receive a service from plaintiff on the ground that there was no serious dispute that plaintiff treated stormwater runoff generated by defendant's properties, and ruled that defendant benefited from that service. Thus, the Court of Claims denied defendant's motion "with respect to defendant's position that it cannot be compelled to pay the charges at issue due to the involuntary transfer of properties it holds."

Defendant filed a claim of appeal under MCR 7.203(A)(1) insofar as the order below was a final one under MCR 7.202(6)(a)(*v*) because it denied defendant's motion for partial summary disposition based on a claim of governmental immunity. On appeal, defendant argues that the Court of Claims erred because defendant was entitled to "immunity" from plaintiff's drainage and stormwater charges, the court improperly distinguished *Harbor Watch*, and the RBA did not otherwise defeat defendant's claim of immunity.

In its reply brief, defendant asserts that plaintiff's contention that the governmental immunity conferred by the GTLA applies to only tort liability is unpersuasive because defendant did not invoke the GTLA. Instead, defendant contends that the immunity provided by MCL 124.764(4) is not limited to tort liability under the GTLA, and that other "legal defenses" in that subsection include other government-specific defenses such as those set forth in *Harbor Watch*.

We conclude that the substance of defendant's arguments fall outside the scope of the claim of appeal because they do not pertain to a denial of governmental immunity.

 MCR 7.202(6)(a)(*v*) unambiguously provides that an order denying a motion for summary disposition based on a claim of governmental immunity is a final order. And the LBFTA provides

that, after an involuntary transfer of a tax-reverted property, a land bank "shall be deemed to have assumed any *governmental immunity* or other legal defenses" available to the foreclosing entity. MCL 124.764(4) (emphasis added). Thus, assuming without deciding that the "other legal defenses" referenced in MCL 124.764(4) includes other kinds of immunities, an order is a final one under MCR 7.202(6)(a)(*v*) if the order denied a claim specifically of governmental immunity. As discussed above, governmental immunity pertains to statutory immunity from tort liability. *Hannay*, 497 Mich at 58-59.

Plaintiff's claim for unpaid charges for drainage and stormwater services does not seek to impose tort liability on defendant. Instead, plaintiff's claim could be construed as either a contract claim, or perhaps more fairly, a quasi-contractual claim for restitution. Under either characterization, governmental immunity would not bar plaintiff's claim. See *Bradley*, 494 Mich at 387; *Wright*, 504 Mich at 421, 423-424. Accordingly, to the extent that defendant asserted governmental immunity in the Court of Claims, defendant cannot show that the court erred by denying defendant's motion for partial summary disposition on that ground, because governmental immunity does not bar contract claims for damages or quasi-contract claims for restitution.

Defendant generally contends that this Court's holding in *Harbor Watch* entitled defendant to immunity from plaintiff's charges, but the term "immunity," governmental or otherwise, does not appear in that opinion, and the case was decided on entirely different grounds. Although defendant shrouds its arguments with the label of immunity, that label is not dispositive. Courts "are not bound by a party's choice of labels because this would effectively elevate form over substance." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 204; 920 NW2d 148 (2018) (quotation marks and citation omitted). Other than defendant's usage of the term "immunity," nothing in the substance of defendant's arguments pertains to governmental immunity, and defendant fails to identify the precise nature of the immunity it relies on.

As defendant acknowledges, MCL 124.764(4) confers upon it "other legal defenses" as are available to the state or other foreclosing governmental unit, and thus defendant could have relied on that subsection to argue that the holding in *Harbor Watch* provided it with a legal defense. But defendant's claim of appeal was based on a denial of governmental immunity, and the scope of this appeal is limited to that issue and not a rejection of other legal defenses. See MCR 7.203(A)(1). The opinion and order of the Court of Claims was not otherwise a final order as defined by MCR 7.202(6), and defendant did not file an application for leave to appeal under MCR 7.205. Therefore, the substance of defendant's arguments are beyond the scope of this claim of appeal.

Nonetheless, we note that, where a claim of appeal fails to trigger this Court's operational jurisdiction on that basis, this Court has the discretion to decide the matter as on leave granted, and is inclined to do so in the interests of judicial economy when the appeal presents a matter of significant public interest. See *Detroit v Michigan*, 262 Mich App 542, 546; 686 NW2d 514 (2004). Relatedly, this Court may, at its discretion, "permit amendment or additions to the grounds for appeal," MCR 7.216(A)(3), and "enter any judgment or order or grant further or different relief as the case may require," MCR 7.216(A)(7). Thus, we hereby choose to consider the substance of defendant's argument as on leave granted.

## V. INVOLUNTARY TRANSFERS AND *HARBOR WATCH*

Defendant contends that, under MCL 124.764(4), it has no obligation to pay plaintiff's drainage and stormwater charges for the properties defendant received through involuntary transfers because this Court held in *Harbor Watch* that foreclosing governmental units were not liable for local charges that were otherwise required by law. Additionally, defendant contends that the Court of Claims erred by distinguishing *Harbor Watch*, by concluding that defendant agreed to pay for plaintiff's drainage and stormwater services, and by relying in part on a portion of *Harbor Watch* which defendant asserts was obiter dictum. Defendant fails to show that the Court of Claims erred.

In *Harbor Watch*, the defendant was a county treasurer who was the temporary owner of multiple tax-reverted condominium units as a foreclosing governmental unit under the GPTA, and the plaintiff, who was the pertinent condominium association, filed a complaint against the county treasurer because it did not pay the common expenses for the condominium units as required by the applicable bylaws. *Harbor Watch*, 308 Mich App at 381-382. This Court explained that the case presented "the question whether a county treasurer is liable for condominium assessments during the time it holds title to a condominium unit that is subject to forfeiture and foreclosure under the GPTA." *Id*. at 384.

This Court observed that the "GPTA *required* defendant to foreclose on the forfeited units," and that the defendant "cannot be held liable for assessments when it was performing a statutory obligation." *Id*. at 385. This Court rejected the plaintiff's argument that tax foreclosures were voluntary under the GPTA on the ground that the provision the plaintiff relied on was limited to Headlee Amendment purposes.[5] *Id*. at 385-386. This Court agreed with the defendant's assertion that the GPTA provided no mechanism for it to pay the plaintiff's assessments because the payment of condominium assessments was not included on the list of permitted uses of the proceeds from the sale of foreclosed properties, and that even if the assessments were considered an allowable maintenance cost permitted under the GPTA, it was undisputed that the sales of the condominiums did not generate enough proceeds to cover the taxes due on the properties, which had the first priority for payment under the GPTA. *Id*. at 386-387.

This Court further explained that a municipality cannot be legally bound to perform an ultra vires act, and that recovery might sometimes be possible under equitable principles where formalities were not followed, but performance was within a defendant's legal authority. *Id*. at 387-388. But this Court concluded that the defendant did "not have the legal authority under the GPTA to pay the condominium assessments," and that an "executory contract of a municipal corporation made without authority may not be enforced . . . ." *Id*. at 388 (quotation marks and citation omitted).

---

[5] The Headlee Amendment to the state constitution, enacted by voter initiative in 1978, places certain limits on the Legislature's authority to impose costs on local units of government. See Const 1963, art 9, § 29.

Defendant asserts that *Harbor Watch* applies to the tax-reverted properties involuntarily transferred to it such that it need not pay plaintiff's charges in relation to those properties. We conclude that the Court of Claims properly ruled that *Harbor Watch* was inapplicable to plaintiff's charges for the provision of utility services. As the court noted, *Harbor Watch* pertained to condominium fees that "the defendant never agreed to pay," whereas plaintiff's charges for utility services were based on a municipal ordinance. The court also concluded that defendant, unlike the defendant in *Harbor Watch* who lacked the legal authority to pay under the GPTA, was not prohibited by the LBFTA from paying plaintiff's charges, and instead the LBFTA authorized defendant to take actions necessary to preserve the value of its properties under MCL 124.756(1). And, as discussed above, a municipality's acceptance of service from another municipality implies a promise to pay. See *Detroit*, 326 Mich at 99.

Thus, the Court of Claims properly concluded that *Harbor Watch* was inapplicable because it pertained to condominium assessments rather than to charges for the provision of utility services, and defendant was not statutorily barred from paying plaintiff's charges. And defendant's contention that the Court of Claims erroneously concluded that defendant agreed to pay plaintiff's charges is not supported by the text of the court's opinion and order, where the court drew a distinction between condominium assessments and charges for the provision of utility services.

Nonetheless, defendant argues that the Court of Claims erred by distinguishing *Harbor Watch* by relying on the ultra vires discussion in that decision because it was obiter dictum, and, alternatively, that it should prevail even if that discussion were not dictum.

"It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007). According to defendant, the essential holding of *Harbor Watch* was that the "GPTA *required* defendant to foreclose on the forfeited units," and that the defendant "cannot be held liable for assessments when it was performing a statutory obligation." *Harbor Watch*, 308 Mich App at 385. But those statements were not supported by antecedent legal analysis, and in fact preceded the remaining analysis where this Court concluded that the defendant was not authorized under the GPTA to pay condominium assessments, and could not be forced to perform an ultra vires act. *Id.* at 385-387. Defendant's reading of *Harbor Watch* would improperly narrow that decision to that conclusory statement.

Defendant asserts, in a cursory fashion, that even if the ultra vires portion of *Harbor Watch* is not obiter dictum, defendant should prevail under the same ultra vires defense that a foreclosing governmental unit could raise. But the Court of Claims noted that defendant never argued that "paying stormwater charges is an ultra vires act," then recognized that, while the GPTA prohibited "the payment of such monies" because of the strict priority list it imposed for payments from funds received by a foreclosing governmental unit, the LBFTA did not otherwise strictly constrain defendant's use of funds.

Defendant does not fully address whether it can properly raise the ultra vires defense despite its powers and discretion under the LBFTA. And defendant provides no binding legal authority in support of its assertion. "If a party fails to adequately brief a position, or support a claim with authority, it is abandoned." *MOSES Inc v SEMCOG*, 270 Mich App 401, 417; 716

NW2d 278 (2006). Thus, defendant has abandoned this assertion by failing to adequately argue and support it.

Defendant also relies on *Schwab v City of Jackson*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued May 15, 2017 (Case No. 2:14-CV-11072),[6] to support its contention that its status as an involuntary landowner shields it from plaintiff's charges. In *Schwab*, which involved a due-process claim against a county, the court ruled as a threshold determination that, under *Harbor Watch*, the county could not be compelled to comply with a municipal ordinance requiring repair and maintenance, but was otherwise required to comply with the ordinance's disclosure requirements because compliance did not require any expenditure of funds. *Schwab*, unpub op at 3. *Schwab* offers little persuasive guidance because the court did not undertake a detailed analysis of *Harbor Watch*, having held it inapplicable to the defendant's duty to disclose information under the relevant ordinance.

Defendant argues that requiring it to pay plaintiff's charges would thwart the purpose of the LBFTA, because payment of local charges would impede its discretion to dispose of properties for little or no consideration, and because the Legislature did not intend to have land banks serve as a source of funds for municipalities. Defendant's argument is unavailing.

MCL 124.764(1) provides that a land bank, in "the exercise of its powers and duties" under the LBFTA, "shall have complete control as fully and completely as if it represented a private property owner and shall not be subject to restrictions imposed on the authority by the charter, ordinances, or resolutions of a local unit of government." Similarly, MCL 124.764(2) provides that, unless permitted by the LBFTA "or approved by an authority, any restrictions, standards, conditions, or prerequisites of a city, village, township, or county otherwise applicable to an authority and enacted after the effective date of this act shall not apply to an authority," but that this "is intended to prohibit special local legislation or ordinances applicable exclusively or primarily to an authority and not to exempt an authority from laws generally applicable to other persons or entities."

Defendant's property, income, and operations "are exempt from all taxation by this state or any of its political subdivisions," MCL 124.754(5), and defendant's income and property "are exempt from all taxes and special assessments of this state or a local unit of government of this state," MCL 124.763.

> A special assessment is a levy upon property within a specified district. Although it resembles a tax, a special assessment is not a tax. In contrast to a tax, a special assessment is imposed to defray the costs of specific local improvements, rather than to raise revenue for general governmental purposes. [*Kadzban v Grandville*, 442 Mich 495, 500; 502 NW2d 299 (1993) (citation omitted).]

---

[6] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 727 n 5; 957 NW2d 858 (2020).

In summary, the LBFTA specifically exempts defendant from taxes and special assessments, but it does not exempt it from laws generally applicable to other persons or entities. And while defendant contends that requiring it to pay plaintiff's charges thwarts the purpose of the LBFTA, such a requirement is consistent with the text of the act.

Defendant asserts that the Court of Claims eviscerated the broad discretion the LBFTA granted it because that grant of discretion is equivalent "to the statutory prohibition on spending in *Harbor Watch*." But the statutory restrictions discussed in *Harbor Watch* pertained to how the county treasurer was prohibited under the GPTA from paying condominium assessments from proceeds of the sales of tax-reverted properties, and how the county treasurer lacked the legal authority to enter into an agreement to pay such assessments. *Harbor Watch*, 308 Mich App at 386-388. Despite defendant's assertion, its broad discretion under the LBFTA is not analogous to a statutory restriction on spending. And, as the Court of Claims properly observed, the broad grant of authority provided to defendant included the legal authority to enter into an agreement to pay for utility services. For these reasons, defendant cannot properly assert that it is being forced to commit an ultra vires act.

## VI. APPLICATION OF THE RBA

Defendant argues that the Court of Claims erred by ruling that the RBA prohibited plaintiff from providing a free service to defendant. We disagree.

MCL 141.118(1) provides as follows:

> Except as provided in subsection (2) [which is applicable only to hospitals or health care facilities], free service shall not be furnished by a public improvement to a person, firm, or corporation, public or private, or to a public agency or instrumentality. The reasonable cost and value of any service rendered to a public corporation, including the borrower, by a public improvement shall be charged against the public corporation and shall be paid for as the service accrues from the public corporation's current funds or from the proceeds of taxes which the public corporation, within constitutional limitations, is hereby authorized and required to levy in an amount sufficient for that purpose, or both, and those charges, when so paid, shall be accounted for in the same manner as other revenues of the public improvement.

The RBA's definition of "public corporation" includes "a county, city, village, township," and "an authority created by or under an act of the legislature . . . ." MCL 141.103(a).

As discussed above, the Court of Claims ruled that plaintiff was barred from providing free services for stormwater charges to public corporations, that defendant was a public corporation under the RBA, that there was no serious dispute that plaintiff treated stormwater runoff generated by defendant's properties, and that defendant benefited from that service.

Defendant argues that the court erred by concluding that defendant was required to pay plaintiff's charges under the RBA. Defendant does not challenge the court's ruling that defendant falls under the definition of a public corporation as defined by the RBA, but asserts that the court disregarded defendant's "immunity" as an involuntary landowner under the LBFTA. But, as

-11-

discussed above, the court properly rejected defendant's reliance on *Harbor Watch*, and defendant does not identify any other source of immunity from, or defense to, plaintiff's charges.

Defendant argues, in a cursory fashion, that the Court of Claims erred because the RBA's definition of public corporation does not include foreclosing governmental units. Defendant's argument is not supported by the text of the RBA or LBFTA.

The LBFTA incorporates the definition of "foreclosing governmental unit" provided by the GPTA. MCL 124.753(f). MCL 211.78(8)(a) provides that a foreclosing governmental unit is either the "treasurer of a county" or the "state if the county has elected . . . to have this state foreclose property . . . forfeited to the county treasurer . . . ." And, as discussed above, the RBA's definition of "public corporation" includes a "county" and an "authority" created by the Legislature. MCL 141.103(a). Thus, a foreclosing governmental unit falls under the RBA's definition of "public corporation." And defendant does not offer analysis of the text of the statutes, or otherwise provide any rationale, for its apparent position that a "treasurer of a county" acting on behalf of the county is not included within the definition of "county," or that an authority created by the Legislature does not fall within the meaning of "the state."

Relatedly, defendant contends that the Court of Claims erred by ruling that a county treasurer would be liable for plaintiff's drainage and stormwater charges. The court rejected defendant's argument that it could "change its stripes" because it received properties from foreclosing governmental units under the GPTA, then noted that defendant's argument "falsely assum[ed]" that foreclosing governmental units were not included within the definition of "public corporation" under the RBA. The court then concluded that "the foreclosing governmental units" defendant obtained its properties from fell "within the list of entities that make up 'public corporations' under the RBA."

Essentially, defendant's contention is based on its characterization of this Court's holding in *Harbor Watch*, which, as discussed above, the Court of Claims properly ruled did not apply to plaintiff's claim against defendant. And to the extent that defendant's contention implies that requiring a county treasurer to pay drainage and stormwater charges for tax-reverted properties would be an ultra vires act because of the restrictions imposed by the GPTA, defendant does not provide any legal authority in support of that implication. Thus, defendant has abandoned any such argument. See *MOSES Inc*, 270 Mich App at 417.

Defendant argues that the Court of Claims created an unnecessary conflict between the LBFTA and the RBA by ruling that plaintiff was barred from providing free drainage and stormwater services to defendant. But defendant's identification of the supposed conflict consists of a statement that, if both statutes address defendant's liability to pay for local charges, then the immunity conferred by MCL 124.764(4) created an exemption to the prohibition of municipalities' providing free services under the RBA. But defendant has not shown that MCL 124.764(4) provided it with immunity or any other legal defense to local charges, and defendant's interpretation of those statutes overlooks MCL 124.764(1) and MCL 124.764(2), which, as discussed above, indicate that defendant is otherwise subject to generally applicable local ordinances.

Defendant contends that the Court of Claims erred by concluding that defendant was the beneficiary of plaintiff's drainage and stormwater services. Defendant does not directly challenge the court's reasoning that there was no dispute that defendant received a service from plaintiff and that the provision of drainage and stormwater services constituted a service rendered. Instead, defendant asserts that it was not a beneficiary of plaintiff's services because defendant owns property for the public's benefit and is thus devoted to a public purpose, such that the RBA's prohibition of free services is not offended.

The RBA defines "public corporation" under MCL 141.103(a) to include counties, cities, and other entities that exist for the benefit of the public and are devoted to a public purpose, and under MCL 141.118(1) specifically provides that public corporations may not receive a free service. Thus, defendant's assertion is not supported by the text of the RBA, and its interpretation of those provisions would substantially negate the prohibition of free services for public corporations.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Michael J. Riordan